[Crim. No. 14566.    Second Dist., Div. Four.    Oct. 16, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ROY E. WALKER, Defendant and Appellant.

Richard H. Levin, under appointment by the Court of Appeal, and Richard Jay Goldstein for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Richard H. Cooper, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant was charged in count I (violation of section 23101 of the Vehicle Code) of driving while under the influence of intoxicating liquor in an unlawful manner and proximately causing bodily injury. In count II, defendant was charged with a violation of section 20001 of the Vehicle Code, hit and run. Defendant pled not guilty to both counts. The cause was submitted on the testimony of the preliminary transcript, and defendant was found guilty of count I and not guilty of count II. Defendant's motion for new trial was denied, criminal proceedings were adjourned and defendant was committed to the custody of the Director of Corrections under section 1203.03 of the Penal Code for a period of observation and diagnosis not to exceed 90 days. Probation was denied and defendant was sentenced to state prison for the term prescribed by law with Vacaville recommended. Defendant has appealed.

Dicente Sanchez Munoz was injured in an accident on July 17, 1966, at about 1 a.m. while crossing Adams Boulevard. Mr. Munoz did not recall any white lines where he crossed the street.

Harris Goldman was driving southbound at Genesee; he had come to a stop at a stop sign on Adams, and he observed defendant's car traveling east on Adams at about 50 miles per hour. Mr. Munoz was crossing from the south side and he had almost reached the north curb when defendant's vehicle hit him with its right fender. Mr. Goldman ran over to defendant, told him not to move, and went to call an ambulance. After Mr. Goldman returned to the scene of the accident, where a crowd had gathered, he realized he mistakenly had told the operator to get an ambulance to the corner of Washington and Fairfax. Defendant was still at the scene of the accident. Mr. Goldman then telephoned again to give the correct location and when Mr. Goldman returned to the scene defendant was leaving in his car. When defendant returned 15 minutes later he was with two men.

Mr. Walton arrived at the scene. A person said that the car which drove away was the one that had hit the person who

was in the street, and told Mr. Walton to get his license number. Mr. Walton followed defendant's car onto the freeway and off again, and, at the corner of Adams and La Brea, Mr. Walton attempted to attract the attention of a police officer, who he then saw stop the Mustang on Adams Boulevard.

Officer Hopkins saw defendant's vehicle on Adams Boulevard at about 1 a.m., after a citizen honked his horn at him, pointed at defendant's car and shouted that it was a hit and run car. Defendant stopped, staggered out, leaned on the fender for support, he staggered again, his eyes were watery and bloodshot, his breath had an alcoholic odor and the officer formed the opinion that he was drunk.

Officer Hopkins advised defendant that he was under arrest and the officer gave a full warning of his *Miranda* [384 U.S. 436 (16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974)] rights. He asked defendant if he understood his rights and defendant said he did. The officer asked if defendant was in an accident, defendant said yes, and that he was trying to get to a telephone, and that he had straightened out the victim's legs. Officer Hopkins and defendant went to the scene of the accident.

Officer Parnell, who was also one of the arresting officers, at about 2:50 a.m. on July 18, 1966, at Central Jail, advised defendant that he had prepared a breathalyzer machine and he would like to take a sample of defendant's breath so that it might be analyzed in order to reveal the amount of alcoholic beverage in defendant's blood. Defendant said he did not want to take the test. Officer Parnell's opinion was that defendant was intoxicated because of the fact that he had a strong alcoholic smell on his breath, his eyes were watery, his speech was thick, and at times he walked in a staggering and weaving manner.

Officer Parnell administered a sobriety test to defendant just prior to the breathalyzer test. Defendant walked directly on the line, staggered off a few times, but never placed his heel against his toe as instructed. On the balance test he swayed slightly from side to side.

Major Carter II spent the evening with defendant. Defendant had a glass of wine at dinner and no more alcoholic beverages that evening. Defendant's driving was normal.

Shirley Cade, who noticed there was an accident, saw defendant who was quite excited. Defendant said that he hit the man and hadn't seen him. Someone from the crowd said the

accident occurred 15 or 20 minutes ago and the ambulance was on its way. Miss Cade stayed for 15 minutes, no ambulance showed up, defendant showed people his identification, and then said he was going to get some help. Miss Cade said he did not appear to be under the influence of alcohol or anything.

Defendant testified that he stopped to help the victim, that he showed Miss Cade and others his identification, and that he remained 40 minutes, the ambulance didn't come and then he went to get help. Defendant said he was not under the influence of alcohol or drugs.

I

■ Defendant asserts that the refusal of defendant to submit to a breathalyzer test should not have been admitted into evidence. In *People* v. *Sudduth* (1966) 65 Cal.2d 543, 547 [55 Cal.Rptr. 393, 421 P.2d 401], it was stated that the defendant's refusal to take the breathalyzer test was admissible evidence and might be the subject of comment and of a proper instruction by the court.

■ Defendant says that there was no evidence that he was aware of the nature of the breathalyzer test or its effect, and in the absence of such evidence no proper foundation was laid for admission of evidence of his refusal. However, Officer Parnell testified that he explained to defendant that he prepared a breathalyzer machine, that he wished to take a sample of his breath so that it might be analyzed, and that the test would reveal the amount of alcoholic beverage content in his blood. Therefore there is no merit to the contention that defendant was unaware of the nature of the test or its effect.

II

■ Defendant argues that the police were required to inform defendant that his refusal to submit to a test may be used against him. Defendant argues that, since *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] requires that a suspect be informed of his right to counsel, to his right to remain silent, and that anything he may say may be used against him, by implication *Miranda* is authority for the proposition that the police must also advise a suspect that his refusal to submit to a test may be used against him. The argument is not well taken. *Miranda* v. *Arizona* has no application to the breathalyzer test or to any of the other commonly used chemical tests. The *Miranda* requirement flows from the fact that a suspect in custody need

not answer police questions at all. Since that is true, the police must amplify the bare notice of that right by a warning of the consequences of a waiver. But, as we have seen, a person suspected of intoxication may not refuse to submit to a legitimate test. Having no choice, there is no need to advise him of the consequences of a refusal that he may not lawfully make.[1]

## III

■ Defendant argues that the police erroneously failed to inform defendant of his right to have a blood or a urine test. Insofar as that contention relies on the provisions of section 13353 of the Vehicle Code it is misplaced, since that section did not become law until after the events herein involved. Had defendant ever urged in the trial court the contention that his refusal was directed to the particular test and that he had some personal predilection for some recognized alternative, the point might have merit. But his refusal was absolute, and the objection in the trial court was based solely on the *Miranda* theory and not on the theory here suggested. An objection available in the trial court and not there made cannot be raised on appeal. (3 Witkin, Cal. Procedure (1954) Appeal, § 94, p. 2261.)

## IV

■ Defendant argues that the police had a duty to inform defendant of his right to the presence of counsel during the field sobriety test. "Neither the denial of the opportunity for advice of counsel before stating whether one will submit to a test and before deciding which test to take, nor the denial of the opportunity to have counsel present while the test is administered, is the denial of any constitutional right." (*Fallis* v. *Department of Motor Vehicles, supra,* (1968) 264 Cal.App.2d 373, 384; *Schmerber* v. *California* (1966) 384 U.S. 757, 766 [16 L.Ed.2d 908, 917, 86 S.Ct. 1826, 1833].)

## V

■ Defendant alleges that Penal Code section 1203.03 is unconstitutional in that it permits the use of the report of the

---

[1] In a case involving the application of section 13353 of the Vehicle Code (not in force at the time of defendant's arrest), the court announced the same rule: "The right to counsel as an incident to the protection of the Fifth Amendment right to remain silent does not apply to the giving of a statement that one will or will not submit to the test required by section 13353, Vehicle Code, in view of the conclusion that the making of such a statement is not a testimonial communication, and since the refusal to take the test has not been declared to be a crime or punishable as such." (*Fallis* v. *Department of Motor Vehicles* (1968) 264 Cal.App.2d 373, at p. 383 [70 Cal.Rptr. 595].)

Director of Corrections, and there is no provision for cross-examining psychiatrists and others who make recommendations. Defendant argues that it is more important that the defendant has a right to cross-examine a psychiatrist than a probation officer. In *People* v. *Clements* (1962) 202 Cal.App. 2d 284, 287 [20 Cal.Rptr. 766], defendant argued that the use of a report under Penal Code section 1203.03 deprived him of the right to confront hostile witnesses. The court held that no objection was raised by defendant's counsel, and the right to confront witnesses was waived. Similarly, in the case before us, defendant waived his right to confront witnesses by not objecting.

## VI

■ Defendant argues that there was no violation of law independent of the intoxication, and that an independent violation of law is required. Vehicle Code section 23101 does, in fact, require the doing of an act forbidden by law or the neglect of a duty imposed by law in addition to injury and driving while intoxicated.[2] However, we do not agree with defense counsel that because "there was no evidence that the victim was struck in a *marked* crosswalk," there was no independent violation of law. There was some evidence from which it could be inferred that the victim was walking in an unmarked crosswalk,[3] and section 21950, subdivision (a), re-

---

[2]Vehicle Code section 23101 reads: "Any person who, while under the influence of intoxicating liquor, . . . drives a vehicle and when so driving does any act forbidden by law or neglects any duty imposed by law in the driving of such vehicle, which act or neglect proximately causes bodily injury . . . ."

[3]That testimony reads:

"Q Now, as a matter of fact, the pedestrian—he was walking northbound, is that right?

"A Yes.

"Q And he was walking northbound from the southwest corner of Adams, is that correct?

"A No, southeast corner—one moment; he was walking from the south to the north, east of Genesee.

"Q Well, when I referred to the southeast corner, I'm referring to this corner here where you marked out the telephone booth.

"A Yes.

"Q And he was walking from that point northbound, was he not?

"A Well, a little west of the telephone booth, where I marked it.

"Q Was he immediately south of the northeast corner? Was he walking towards the northeast corner?

"A Yes, he was.

"Q From the south side of the street?

"A Yes.

"Q And the impact was at the point of the northeast corner, is that correct?

"Yes, kind of—yes."

quires that under those circumstances an automobile approaching the intersection must yield the right of way to the pedestrian. (*Taylor* v. *Jackson* (1954) 123 Cal.App.2d 199 [266 P.2d 605] ; *Overacker* v. *Key System* (1950) 99 Cal.App. 2d 281 [221 P.2d 754].) However, even if the victim was not in an unmarked crosswalk, defendant had a duty to exercise due care for the pedestrian's safety, by virtue of Vehicle Code section 21954, subdivision (b). (See *Lebkicher* v. *Crosby* (1954) 123 Cal.App.2d 631 [267 P.2d 361].) Defendant admitted not seeing the victim, and it could be inferred that defendant failed to exercise due care and neglected a duty imposed by law.

## VII

█ Defendant argues that defendant's counsel failed to make certain objections and therefore his representation by counsel was inadequate. (*People* v. *Ibarra* (1963) 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487].) The decision to make certain objections is often a matter of strategy. Defendant had more than an adequate defense.

The judgment is affirmed.

Files, P. J., and Jefferson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied December 11, 1968.