[Crim. No. 20002. Dec. 12, 1978.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL EUGENE ARBUCKLE, Defendant and Appellant.

**COUNSEL**

David E. Kenner for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Robert F. Katz and Stephen M. Kaufman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**MOSK, J.**—Defendant appeals from a sentence imposed following a negotiated plea. After extensive pretrial proceedings, he was charged, in a consolidated information, with (count I) assault with a deadly weapon with intent to commit murder (Pen. Code, § 217), (count II) assault with a deadly weapon (Pen. Code, § 245, subd. (a)), and (count III) possession of marijuana for the purpose of sale (Health & Saf. Code, § 11359).

Pursuant to a plea bargain, defendant entered a plea of guilty to count I. In return, it was agreed that counts II and III would be dismissed, that defendant would be referred to the Department of Corrections for preparation of a report under the provisions of section 1203.03 of the Penal Code, and that the judge would "follow the recommendation" made in such report in sentencing defendant.

In its report, the Department of Corrections concluded the defendant should receive a prison term because (1) probation supervision was deemed inadequate for him; (2) he was considered an unreasonable threat to the community; and (3) the likelihood of recidivism in his case was considered to be high.[1] Expressing a minority viewpoint, the correctional counselor recommended probation with imposition of maximum county jail time. Her report enumerated several factors which favor probation: (1) criminal behavior had occurred in an unsettled period of the defendant's life, i.e., after marital conflict and divorce; (2) he is remorseful and freely admits his wrongful behavior; (3) he has strong family support in his rehabilitation efforts; and (4) while allowed to live in the community under bail bond pending court proceedings, he was, from all indications, a law abiding and productive citizen—even to the extent of passing the journeyman wireman's examination of his local electrician's union and maintaining employment in that category.

---

[1] The reviewing committee, composed of the superintendent and casework supervisor, was in accord with the clinical psychologist in recommending a prison sentence. The psychological evaluation indicates that the following tests were administered: "Army General Classification Test, Shipley-Hartford, California Achievement Test, Minnesota Clerical, Minnesota Paper Form Board, DAT Mechanical Reasoning, Kuder, Minnesota Multiphasic Personality Inventory, Sentence Completion, Draw-A-Person, Who-Are-You, Personal Information, and Diagnostic Interview." Nevertheless, the conclusions reached seem to be based on the nature of the crime itself rather than as the result of testing. The report concludes as follows: "Subject is a person with ability and he can make a favorable impression during an interview. The present offense was predatory and a serious aggressive act. A positive prognosis cannot be offered at this time."

After the report from the Department of Corrections had been received, defendant moved for a hearing to challenge the report, alleged deficiencies in the psychological evaluation, and sought to subpoena the personnel who prepared the report. The motion was denied and the subpoenas were quashed pursuant to a motion of the People, both rulings being made by Judge Robert H. London, the judge who had accepted the plea bargain.

Defendant then unsuccessfully sought a writ to compel the hearing and to allow the staff witnesses to be subpoenaed. In the interim, Judge London was transferred to another department of Los Angeles County Superior Court. The case subsequently was called before Judge Raymond R. Roberts. Defendant objected to imposition of sentence by Judge Roberts; he insisted that he was entitled to be sentenced by Judge London under the terms of the plea bargain. His request for a transfer was denied and Judge Roberts sentenced him to prison for the term prescribed by law.

I

Defendant first contends that his right to a probation and sentencing hearing pursuant to Penal Code section 1204 was effectively denied because he was not permitted to cross-examine the Department of Corrections personnel who prepared the report or to introduce expert testimony challenging the methodology used by the staff. He correctly asserts a right to present evidence tending to mitigate punishment or assist in the determination of his application for probation. (Pen. Code, § 1204; *People* v. *Barajas* (1972) 26 Cal.App.3d 932, 939 [103 Cal.Rptr. 405]; *People* v. *Valdivia* (1960) 182 Cal.App.2d 145, 148 [5 Cal.Rptr. 832].) The defendant is entitled to an opportunity to respond to adverse sentencing information. (*In re Calhoun* (1976) 17 Cal.3d 75, 84 [130 Cal.Rptr. 139, 549 P.2d 1235].) Here, however, defendant did not offer or produce his own evidence; rather he sought only to discredit the report submitted to the court under Penal Code section 1203.03. Thus he chose not to present affirmative material, even though the Legislature has expressly provided that probation shall not be granted to a defendant who committed an assault with intent to commit murder "[e]xcept in unusual cases where the interests of justice would best be served . . . ." (Pen. Code, § 1203, subd. (d).)

The three cases cited by defendant to support the asserted right of confrontation are of little aid in determining the merits of his contention

since the claimed right was rejected in each instance as being waived or not protected by objection in the trial court. (*People* v. *Label* (1974) 43 Cal.App.3d 766, 775 [199 Cal.Rptr. 522]; *People* v. *Walker* (1968) 266 Cal.App.2d 562, 568 [72 Cal.Rptr. 224]; *People* v. *Clements* (1962) 202 Cal.App.2d 284, 287 [20 Cal.Rptr. 766].) There is no statutory support for the asserted right to confront and cross-examine as witnesses those who prepare a report which, pursuant to section 1203.03, must contain a diagnosis and recommendation in writing.[2]

Neither does the purported right of confrontation in these circumstances derive from the Sixth and Fourteenth Amendments to the federal Constitution or article I, section 15, of the California Constitution. In *Williams* v. *New York* (1949) 337 U.S. 241, 251 [93 L.Ed. 1337, 1344, 69 S.Ct. 1079], the United States Supreme Court concluded that the federal due process clause does not extend the same evidentiary protections at sentencing proceedings as exist at the trial. ■ A sentencing judge "may, consistently with the Due Process Clause of the Fourteenth Amendment, consider responsible unsworn or 'out-of-court' information relative to the circumstances of the crime and to the convicted person's life and characteristics." (*Williams* v. *Oklahoma* (1958) 358 U.S. 576, 584 [3 L.Ed.2d 516, 521-522, 79 S.Ct. 421].)

More directly, several courts have held the Sixth Amendment right of confrontation inapplicable at the sentencing stage of a criminal prosecution. (See, e.g., *United States* v. *Fischer* (2d Cir. 1967) 381 F.2d 509, 511, cert. den. (1968) 390 U.S. 973 [19 L.Ed.2d 1185, 88 S.Ct. 1064]; *Fernandez* v. *Meier* (9th Cir. 1970) 432 F.2d 426, 427.)

We have previously examined due process protection in the context of probation and sentencing hearings. "While *Williams* [v. *New York*] does not require the same procedural safeguards at probation hearings as in the case of a trial on the issue of guilt, an applicant for probation is nevertheless entitled to relief on due process grounds if the hearing procedures are *fundamentally unfair.*" (*People* v. *Peterson* (1973) 9 Cal.3d 717, 726 [108 Cal.Rptr. 835, 511 P.2d 1187]; italics added.) Reliability of

---

[2]Defendant attempts to rely on Penal Code section 686, subdivision 3 which provides a criminal defendant with the right to be confronted with the witnesses against him. That provision is designed to apply during trial on the issue of guilt in a criminal action. Even were we to assume arguendo that it was intended to apply to probation and sentencing hearings, subdivision 3(a) provides that: "Hearsay evidence may be admitted to the extent that it is otherwise admissible in a criminal action under the law of this state." Penal Code section 1203.03 provides for admission of the report; it would therefore come within the exception set forth in subdivision (3)(a). (See *People* v. *Ingram* (1969) 272 Cal.App.2d 435, 439 [77 Cal.Rptr. 423].)

the information considered by the court is the key issue in determining fundamental fairness. In *Peterson* the testimony of a police officer at the probation hearing regarding hearsay comments made by an informant was held sufficiently reliable for consideration by the trial court. (*Id.*, at pp. 727-728.) Similarly, the report herein has inherent reliability because it was made pursuant to a court order by expert, objective government personnel in pursuit of their official duties. Further, the report does not stand in isolation; its recommendation was supported by the probation officer's report and by the statutory presumption against probation for assault with intent to commit murder (Pen. Code, § 1203, subd. (d)).

The defendant could have challenged factual statements contained in the report by presenting his own evidence; but fundamental fairness does not require that he be allowed to challenge such statements by cross-examining the personnel who prepared the report, nor does it require that he be permitted to challenge the professional methods they employed. The report was fair on its face; a full hearing on collateral issues emanating in an ever-widening circle from the central issue—the proper sentence to be imposed—is therefore not warranted.

We cannot be oblivious to the drain on time and public resources the demands of defendant would impose. Between 2,000 and 3,000 diagnostic reports are prepared annually by the Department of Corrections at two institutions for men, one in Northern California (Vacaville) and one in Southern California (Chino), and one statewide for women (Corona). If each criminal defendant throughout the 58 counties could at will subpoena all of the personnel who participated in the evaluation of his rehabilitative potential and the preparation of the report to the court, the department experts would be engaged almost exclusively in travel to and from courts and in court appearances. Neither the express provisions of any statute nor the number of personnel available at the institutions indicate a present legislative intent to require corrections personnel to be available for such pervasive court examination purposes. It seems apparent that the requirement of in-court testimony would seriously hinder the preparation of diagnostic reports, therefore denying to courts and many deserving defendants this useful device.[3] Absent a contrary

---

[3]Allowing an attack by other experts on the methodology utilized to prepare such reports would also stray from the relevant issue, and would have the further consequence of forcing the People to respond with in-court testimony of the challenged experts or in support of them. We emphasize, however, that the defendant is not prevented from producing his own expert testimony to present an alternative rehabilitation program. (Pen. Code, § 1204.)

legislative command, it should be within the sound discretion of the trial court to determine those instances when in-court testimony is required to provide a fundamentally fair proceeding. No abuse of discretion appears in the instant case.

■ Defendant further contends that since the plea bargain elevated the Department of Corrections recommendation to the sole basis for sentencing, it implicitly provided a right to cross-examine the personnel who prepared the report. The section 1203.03 report herein, however, does not play a fundamentally different role than it would in the case of any other defendant; it is simply one factor, among others, considered by the judge in performing his sentencing function. No bargain or agreement can divest the judge of the sentencing discretion he inherently possesses. (*People* v. *Navarro* (1972) 7 Cal.3d 248, 258 [102 Cal.Rptr. 137, 497 P.2d 481].) Thus, no special procedural right is created by such an agreement, except that the defendant could have withdrawn his guilty plea should the judge have proposed to sentence him to prison contrary to the probation recommendation. (Pen. Code, § 1192.5.) Because here the court followed the recommendation in accordance with the plea bargain, defendant cannot complain that this aspect of the agreement was violated.

## II

■ Defendant further urges that Judge Roberts' refusal to transfer the case to Judge London was erroneous; he asserts one of the terms implicit in the plea bargain was that Judge London would perform the sentencing function. We agree that the plea bargain herein was entered in expectation of and in reliance upon sentence being imposed by the same judge. Our conclusion is supported by the judge's repeated use of the personal pronoun when referring to sentencing in the proceeding in which the plea bargain was accepted.[4]

As a general principle, moreover, whenever a judge accepts a plea bargain and retains sentencing discretion under the agreement, an

[4]The transcript reveals this statement of Judge London: "I have agreed, as has your attorney, Mr. Kenner, that before I could send you to the State Prison, I would have to get that 90-day diagnostic study and I would follow the recommendation."

Because we conclude that Judge London's exercise of the sentencing function was a term of the plea bargain, we need not consider defendant's motion for leave to produce additional evidence—i.e., affidavits of Judge London and defendant's attorney stating that the plea was entered into with the understanding that Judge London would be the sentencing judge.

implied term of the bargain is that sentence will be imposed by that judge. Because of the range of dispositions available to a sentencing judge, the propensity in sentencing demonstrated by a particular judge is an inherently significant factor in the defendant's decision to enter a guilty plea. (See 2 Cal. Criminal Law Practice (Cont.Ed.Bar 1969) Sentencing, § 19.9, pp. 137-138; Somit et al., *Aspects of Judicial Sentencing Behavior* (1960) 21 U.Pitt.L.Rev. 613; also see discussion of judicial predictability in Frank, Courts on Trial (1949) p. 201 *ff.*, and Frank, Law and the Modern Mind (1936) pp. 111-112.)

Because the defendant has been denied that aspect of his plea bargain, the sentence imposed by another judge cannot be allowed to stand. (*People* v. *Preciado* (1978) 78 Cal.App.3d 144, 148 [144 Cal.Rptr. 102]; *People* v. *Uribe* (1976) 55 Cal.App.3d 600, 604-605 [127 Cal.Rptr. 822]; *People* v. *Newton* (1974) 42 Cal.App.3d 292, 298-299 [116 Cal.Rptr. 690]; see also *People* v. *Kaanehe* (1977) 19 Cal.3d 1, 11 [136 Cal.Rptr. 409, 559 P.2d 1028].) The defendant is entitled to be sentenced by Judge London, or if internal court administrative practices render that impossible, then in the alternative defendant should be permitted to withdraw his plea.[5]

The judgment is reversed and the case remanded for further proceedings in accordance with the views expressed herein.

Tobriner, J., and Manuel, J., concurred.

**NEWMAN, J., Concurring.**—I do not agree with the majority's conclusion that "the report herein has inherent reliability because it was made pursuant to a court order by expert, objective government personnel in pursuit of their official duties." Fundamental fairness requires, I believe, that a defendant in cases like this be allowed some kind of confrontation of the "experts" as well as an opportunity to challenge their methodology.

I concur in the holding that defendant was denied part of his plea bargain, however, and thus I agree with the majority's disposition of the case.

---

[5]We recognize that in multi-judge courts, a judge hearing criminal cases one month may be assigned to other departments in subsequent months. However a defendant's reasonable expectation of having his sentence imposed, pursuant to bargain and guilty plea, by the judge who took his plea and ordered sentence reports should not be thwarted for mere administrative convenience. If the original judge is not available for sentencing purposes after a plea bargain, the defendant must be given the option of proceeding before the different judge available or of withdrawing his plea.

**BIRD, C. J.**—I agree with the concurring and dissenting views expressed by my colleague, Justice Newman.

**RICHARDSON, J.,** Concurring and Dissenting.—I concur in that portion of the majority opinion which holds that while a defendant has a right to present evidence tending to mitigate punishment or assist in the determination of his application for probation, he has no right to cross-examine the Department of Corrections' employees who prepared the report or to introduce expert testimony challenging the methods used by the staff.

I respectfully dissent, however, from that portion of the majority opinion which holds that, as a general principle, whenever a judge accepts a plea bargain one of the implied and enforceable terms of the bargain is that sentence will be imposed by the particular judge who accepts the plea. In my opinion no express promise should be made by a court, the prosecutor, or defense counsel; nor should such a condition in the usual case be routinely implied. A promise to a defendant that a particular judge will impose sentence has been held to be improper, because it encourages "judge-shopping," an undesirable practice that should be discouraged. (*People* v. *Preciado* (1978) 78 Cal.App.3d 144, 149 [144 Cal.Rptr. 102].)

Because it appears in the matter before us that entry of the plea was conditioned upon imposition of sentence by a particular judge who was not available, failure to meet the condition constituted a breach of the plea bargain and defendant must be permitted to withdraw his guilty plea and replead if he so elects.

**CLARK, J.,** Concurring and Dissenting.—I concur in the majority opinion insofar as it holds an applicant for probation has no right to cross-examine the Department of Corrections employees preparing the diagnostic report or to introduce expert testimony challenging the methodology they employed.

I join Justice Richardson in dissenting from the majority opinion insofar as it holds that, generally, a plea bargain is impliedly conditioned on sentence being pronounced by the judge accepting the plea. I agree with Justice Richardson that "no express promise should be made by a court, the prosecutor, or defense counsel; nor should such a condition in the usual case be routinely implied." (*Ante.*)

I further dissent from the majority opinion insofar as it reverses the judgment and remands the cases for further proceedings in accordance with the views expressed therein, viz., that "defendant is entitled to be sentenced by Judge London, or if internal court administrative practices render that impossible, then in the alternative defendant should be permitted to withdraw his plea." (*Ante*, p. 757.)

There was substantial compliance with the plea bargain. The bargain provided in pertinent part that defendant would be referred to the Department of Corrections for preparation of a diagnostic report under the provisions of section 1203.03 of the Penal Code, and that the judge would follow the recommendation made in the report in sentencing defendant.[1] The report recommended defendant be sentenced to prison. Defendant was so sentenced. He therefore has nothing of which to complain.

I would accordingly affirm the judgment.

---

[1] "[The court:] The obligation which has been placed on the Court by this bargain is that I could not send you directly to State prison; rather, I would send you to the State prison under the provisions of Penal Code Section 1203.03. That provides for a 90-day diagnostic study and report offered to me from the Department of Corrections, and that report usually concludes with the recommendation as to whether or not you should go to the State prison for the rest of your term. I have agreed, as has your attorney, Mr. Kenner, that before I could send you to the State prison, I would have to get that 90-day diagnostic study *and I would follow the recommendation.* Do you understand that?

"The defendant: Yes, sir.

"The court: And the other charges against you would be dismissed. Do you understand that?

"The defendant: Yes, sir.

"The court: Do you understand there have been no other promises made?

"The defendant: Yes, sir.

"The court: Do you know what the charge of a violation of Penal Code Section 217 carries insofar as a State prison sentence?

"The defendant: Yes, sir.

"The court: What is that?

"The defendant: 1 to 14.

"The court: Do you know there is a very distinct possibility that that is the sentence you will get as a result of this plea?

"The defendant: Yes, sir.

"The court: You still want to enter your plea?

"The defendant: Yes, sir." (Italics added.)