[Crim. No. 36157. Second Dist., Div. Five. Aug. 15, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES MARTIN BROUN, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Adrian K. Panton, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney Gener-

al, Shunji Asari and Sharlene A. Honnaka, Deputy Attorneys General, for Plaintiff and Respondent.

---

**OPINION**

**HASTINGS, J.**—Defendant was charged by information with murder in violation of section 187 of the Penal Code. Pursuant to a plea bargain he pleaded guilty to murder in the second degree. The court, noting defendant was under the age of 21 at the time of apprehension, as part of the plea bargain first committed him to the California Youth Authority (CYA) with the proviso he would be sentenced to state prison if he was rejected by the CYA. CYA then refused to accept defendant. When defendant returned to court for sentencing, his attorney requested "to have the opportunity to bring the three people down from Sacramento to have a hearing to determine exactly why my client was rejected." The motion was denied:

On appeal, defendant contends:

I.  "The CYA abused its discretion by failing to consider the criteria required by section 1737.1 prior to the rejection of [defendant]."

II.  "The principles of equal protection [and due process] mandate judicial review of the decision excluding [defendant] from CYA."

I

Defendant insists the CYA abused its discretion because it rejected defendant pursuant to Welfare and Institutions Code section 1731.5 rather than 1737.1.[1]

---

[1]Section 1731.5 provides: "[¶] After certification to the Governor as provided in this article a court may commit to the authority any person convicted of a public offense who comes within subdivisions (a), (b), and (c). or subdivisions (a), (b), and (d) below: [¶] (a) Is found to be less than 21 years of age at the time of apprehension. [¶] (b) Is not sentenced to death, imprisonment for life, imprisonment for 90 days or less, or the payment of a fine, or after having been directed to pay a fine, defaults in the payment thereof, and is subject to imprisonment for more than 90 days under the judgment. [¶] (c) Is not granted probation. [¶] (d) Was granted probation and probation is revoked and terminated. [¶] *The Youth Authority shall accept a person committed to it pursuant to this article if it believes that the person can be materially benefited by its*

The letter from the Director of CYA to the trial court rejecting defendant states: "Section 1731.5 of the Welfare and Institutions Code requires that the Youth Authority accept persons committed by a criminal court under specified conditions if it believes that the person can be materially benefited by its reformatory and educational discipline, and if it has adequate facilities to provide such care."[2] The CYA was correct. Section 1731.5 establishes the criteria the CYA must follow before initially *accepting* a person for treatment. Section 1737.1 applies to a person convicted in adult court who has been committed to *and accepted* by the CYA. In our present case defendant had not been accepted by the CYA and therefore section 1731.5 was clearly the appropriate section.

## II

■    The gist of defendant's equal protection and due process argument is that since someone committed to the California Rehabilitation

---

*reformatory and educational discipline, and if it has adequate facilities to provide such care.*" (Italics added.)

Welfare and Institutions Code section 1737.1 provides: "Whenever any person who has been convicted of a public offense in adult court and committed to *and accepted* by the Youth Authority appears to the Youthful Offender Parole Board, either at the time of his or her first appearance before the board or thereafter, to be an improper person to be retained by the Youth Authority, or to be so incorrigible or so incapable of reformation under the discipline of the Youth Authority as to render his or her detention detrimental to the interests of the Youth Authority and the other persons committed thereto, the board may order the return of such person to the committing court. The court may then commit him to a state prison or sentence him to a county jail as provided by law for punishment of the offense of which he was convicted. The maximum term of imprisonment for a person committed to a state prison under this section shall be a period equal to the maximum term prescribed by law for the offense of which he was convicted less the period during which he was under the control of the Youth Authority. This section shall not apply to commitments from juvenile court." (Italics added.)

[2] The reasons given in the letter for rejecting defendant are, in part: "Mr. Brown's [*sic*] official history of delinquent and criminal behavior has extended over the past 6-1/2 years and has persisted, and escalated, regardless of efforts made at the county level and by the Youth Authority. He has been committed to the Youth Authority once before and there has been no noticeable progress related to his drug-oriented life style. We feel that this behavior is so firmly established that it would not be significantly altered by further Youth Authority placement.

"At the age of 20, Mr. Brown [*sic*] has been in the county jail several times. Given his experience in jails and correctional institutions, and his persistent criminal behavior, we do not believe that any other disposition available to the court would appreciably exacerbate his criminal behavior beyond what might be expected by another Youth Authority commitment."

Center (CRC) for narcotic addiction is entitled to court review of the administrative decision to exclude, so is a CYA reject. Defendant relies principally on *People* v. *Ramirez* (1979) 25 Cal.3d 260 [158 Cal.Rptr. 316, 599 P.2d 622] which held that the due process clause entitles a CRC patient-inmate to receive a statement of the grounds for his exclusion from the program, access to the information that the director considered in reaching his decision, and opportunity to respond. *Ramirez*, however, citing *People* v. *Arbuckle* (1978) 22 Cal.3d 749 [150 Cal.Rptr. 778, 587 P.2d 220] denied defendant Ramirez the right to confront and cross-examine CRC personnel.

In *People* v. *Ferrel* (1972) 25 Cal.App.3d 970 [102 Cal.Rptr. 372] the court found no hearing was required after the CYA rejected a defendant if the record indicates that the rejection was not an abuse of discretion. Defendant in our present case argues that *Ramirez* implicitly overruled *Ferrel*. We do not find it necessary to consider this argument because we conclude that *Ramirez* is not controlling on our present case.

In *Ramirez*, the defendant had been accepted by the CRC and the reasoning of our Supreme Court was centered on the rights and interests he had acquired by such acceptance and how these rights would be affected by his expulsion from the program. In other words, he was being subjected to a status change. Here, defendant was only being *considered* for acceptance and defendant was not subject to a status change by the rejection.[3] There is no authority that holds that the due process clause entitles a defendant to a prerejection hearing.

Defendant is entitled to due process protection from an arbitrary and wrongful rejection from CYA where the record demonstrates such an abuse of discretion. The record here, however, is clearly to the contrary. The criterion for defendant's acceptance, is set out in section 1731.5. The CYA shall accept a person "if it believes that the person can be materially benefited by its reformatory and educational discipline...." The reasons for excluding defendant were concisely stated by the direc-

---

[3]As part of the plea bargain the court informed defendant he would be sentenced to the state prison (15 years to life) if rejected by the CYA and then the court pointedly exclaimed: "You know, there is no guarantee—this Court is not guaranteeing that you are going to the California Youth Authority?" The defendant answered: "I understand that."

tor in the rejection letter to the trial court. The reasons were clearly supported by the facts and the record. (See fn. 2, *ante.*)

The judgment is affirmed.

Kaus, P. J., and Stephens, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 5, 1980. Newman, J., was of the opinion that the petition should be granted.