Filed 4/22/22  P. v. Alexander CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

----

| | |
|---|---|
| THE PEOPLE, | C095163 |
| Plaintiff and Respondent, | (Super. Ct. No. 20CR002460) |
| v. | |
| THOMAS WAYNE ALEXANDER, | |
| Defendant and Appellant. | |

Defendant Thomas Wayne Alexander pled guilty to oral copulation or sexual penetration of a child 10 years old or younger in exchange for a sentence of 15 years to life and dismissal of several other sexual abuse charges and special allegations.  The trial court accepted the plea and sentenced defendant accordingly.  The trial court, however, reserved jurisdiction over restitution, fines, and fees.

Following a hearing, the trial court ordered defendant to pay $150,000 in direct victim restitution.  Defendant appeals the victim restitution order.  He asserts the trial court violated his constitutional right under the United States Constitution to a jury

1

determination of the facts and his right to a jury trial under article I, section 16 of the California Constitution. Defendant further asserts the order should be vacated because the trial court erred in failing to specify the losses to which the order pertained as required under Penal Code[1] section 1202.4, subdivision (f)(3) and it did not have an adequate factual foundation for the award. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

I

*The Offense And Surrounding Circumstances*

Although the plea agreement states the police report would constitute the factual basis for the plea, the police report was not included in the record on appeal. We take the following from the probation report, which incorporates the police report.[2]

"According to the Tehama County Sheriff's Office (Report #20-00515), on March 24, 2020, the sheriff's office received a report from Children's Protective Services that a nine-year-old girl said she had spent the night at the defendant's house with her ten-year-old friend, the victim in the current matter. The defendant had both girls sleep in his bed with him. While in bed, the defendant rubbed the nine-year-old girl's 'back and butt' and 'tickled' her chest, the next morning the defendant said, 'here comes the hungry bear' and bit the girl on her arms, back and legs and 'slobbered' on her.

---

[1] All further undesignated section references are to the Penal Code.

[2] The trial court may (and here did, as explained *post*) consider the information in the probation report in making discretionary sentencing decisions where the defendant had an opportunity to review the report and challenge its contents, including the statement of facts and circumstances of the offense described therein. (See *People v. Tran* (2015) 242 Cal.App.4th 877, 887, 893.) The information pertaining to the history of defendant's abuse of the victim is further pertinent because, as defendant concedes in his opening brief, he "checked the box on the plea form which allowed the trial court to consider dismissed counts in determining the sentence and restitution." The dismissed sexual abuse counts in this case pertained to the same victim.

"On the same day, the defendant was questioned about the allegations. He admitted having the two girls sleep in his bed with him and that it was a 'bad mistake.' He said the nine-year-old girl 'butted up against him' in her sleep but he pushed her away. He thinks she may have misinterpreted that as inappropriate touching.

"On October 8, 2020, a second interview with the nine-year-old girl was conducted. She repeated her earlier allegations but soon became emotional and fearful and said she could not remember all that had happened. The ten-year-old victim was then interviewed. She said she had stayed at the defendant's home with him many times in the three years since she was in the third grade. She liked to stay at his house to get a break from her siblings. He sexually abused her almost every time she stayed with him. The abuse would occur in his bed, in the shower, on his couch and in his car.

"He would 'persuade' her to sleep in his bed even if she did not want to and make her shower with him. He had her take off her clothes in front of him and he would give her one of his shirts to wear. He put his penis in her vagina and in her mouth. He would also put his fingers in her vagina and orally copulate her. She said after he would orally copulate her it made her mouth feel 'disgusted.' In the shower, he would make her wash him and he would wash her. In the bath, he would have her sit on his lap. On the couch and in his car, he would have her sit on his lap and put her hands down his pants and touch his penis. If she refused to participate in the abuse, he told her it made him sad or he would threaten to take her home. She was made to promise that she would never tell anyone about what they were doing or she could never see him again . . . . The victim said she is having nightmares about the defendant and is afraid he will escape from jail. She never wants him to be released from jail.

"The defendant said he has known the victim since she was a baby. He calls her and her brothers his grandchildren. He takes them swimming and does other things with them 'like a grandfather would do.' At first, the defendant denied being a part of any abuse. He eventually admitted 'hugging and kissing' her, fondling her vagina,

3

performing oral sex on her and having her perform oral sex on him and taking numerous showers together."

## II

### *The Victim Restitution Hearing*

The prosecution requested $150,000 in direct victim restitution. The prosecution relied on *People v. Smith* (2011) 198 Cal.App.4th 415 as the legal basis for the request. The trial court stated it was "aware of the case law regarding availability of noneconomic damages with respect to therapy, medical costs, pain and suffering, all of that." The trial court asked the prosecutor, "what is the evidentiary basis for what it is that you're presenting?" The prosecutor responded the victim's therapist would testify about "her experience and, in her opinion, sort of projecting future therapy needs."

The victim's therapist testified she had treated the victim approximately 33 times. The victim had expressed to her the following impacts from the sexual abuse: "She has reported that it changed her life because she's not the same person as she was before. She stated that she's not as social with others. That she's afraid. That she has to take medication, and she has panic attacks." The victim further explained "she didn't want to talk about the secret, because it was painful for her; and she said that it was very difficult for her to focus at school." Because of her panic attacks, the victim is "afraid to go out."

In the therapist's opinion, the victim exhibited signs of depression, as evidenced by "an indication from mother that [the victim] had a knife in her hands and she tried to cut, because she had a flashback." The therapist further saw signs of posttraumatic stress disorder in the victim based on the flashbacks, nightmares, and "triggers" when the victim saw people who look like defendant or cars like the one defendant had, and the victim's avoidance in thinking about the abuse because "it's too stressful for her." In the therapist's opinion, the "triggers" discussed would lead to declines in the victim's mental health.

When asked how long the victim will likely need therapy, the therapist responded: "I will say for [a] long time. She is just 12 years old, and she will need at least treatment for her teenage years, and she will need . . . to continue with medication. [¶] She is afraid what will happen . . . when he gets out. She doesn't know if she wants to live in the same town or she [if] wants to move. She's afraid of what will happen, and I'm afraid that . . . may, you know, trigger some more [post-traumatic stress disorder] symptoms when she's grown up. [¶] Also, when a child is abused, they have stages in their lives, you know, they get married, they have kids. It may impair her relationships in the future as a grown up and interfere with her work. It may impair relationships, and they're also not -- not all the time, but they're likely to get into drugs and other negative life situations without the proper assistance of help, with professional help."

The therapist testified the average cost for mental health therapy in the area is "around $120, at least, an hour or it can be more."

At the conclusion of the hearing, the prosecution explained it was requesting $150,000, "[t]hat is [$]50,000 for each of the three years of reported abuse." The trial judge responded: "I guess, I'm . . . trying to narrow down . . . what the request is specifically tailored to aside from the years of abuse. Are you talking about future psychological expenses? Are you talking about the noneconomic damages such as pain and suffering . . . that are potentially allowable in a situation such as this? I mean . . . what is the breakdown, because . . . the [$]50,000 for each year for the three years of what you said was the abuse sounds like noneconomic pain and suffering-type damages; and that type of award would be the type of award that I think you were referring to with regard to the case that was cited versus psychological expenses that would be permissible pursuant to statute and cases such as the *O'Neal* case . . . or is it a mix of both and, if so, what's the breakdown, and then I will hear from [defense counsel]."

The prosecutor responded: "Your honor, it is a mix of both. Given the nature of this offense, we do believe she's entitled to her damages for pain and suffering. We also

believe she would need funds for future therapy; however, at this time, it's difficult to project what exactly that amount will look like. We have a base number at minimum of $120 per session, but how many for how long is difficult to determine at this stage in her treatment, except for to say likely many years and possibly different periods of intense therapy, other periods of lighter therapy and medication. [¶] In light of that, the [$150,000] reflects a mix for both together."

Defense counsel responded: "Your Honor, [the prosecution] just admitted that future counseling needs and costs is [*sic*] difficult to determine. I would take that farther and say that it's not difficult, but impossible to determine. [¶] Prior to this hearing, the [prosecution] provided a little breakdown of what the [$]150,000 was based on and [it] had 30 years of counseling, 26 sessions per year at $175, totaling [$]136,500; and then also thrown in was the mother's estimated future medical costs of $13,500. There was no claim for any past counseling or medical expenses. The [$]13,500 appears to be based on nothing at all and just to go out on a limb, it appears that number just so happens to bring the total to a nice round number [$]150,000. All completely baseless." The trial court interjected and confirmed defense counsel had received "a breakdown of what that estimate was comprised of."

The trial court then responded to defense counsel: "If you were given nothing and it was [$]150,000, I think I would agree with the statement that it was baseless, but you were given information based on an estimate of what it may be in the future. But you believe that despite that estimate and the reason given to you -- which isn't before the Court, this is something you received outside of court -- that . . . is still baseless and future medical and/or psychological treatment is so vague as to not be ascertainable and therefore can't be awarded. [¶] Is that [the] argument you're making?"

Defense counsel replied: "Yes, your Honor. At the very minimum, it has not been established what the future needs would be in this case. But I believe that coming up with the numbers of -- I mean, it's a mathematical equation 30 times 26 times 175 equals

6

[$]136,500; but the 30 years and 26 are baseless. It's not based on any evidence or facts in this case. That's my point. [¶] The [$]13,500 appears to be thrown in to bring it to a round number of [$]150,000."

The trial court posited: "But . . . [the prosecution] also -- aside from noneconomic future damages -- also stated that it was $50,000 per year, which also could be based on pain and suffering, which is specifically what the Court, to some extent, found in *People v. Smith* and did exactly that type of calculation." Defense counsel said his "point is that that's -- that's a completely different and unrelated way of coming up [with] the $150,000 figure."

Following additional colloquy between the trial court and counsel, the trial court ruled as follows: "Well, the Court in *Smith*, based on the information that was presented regarding the victim, who was an adult at the time that the sentencing took place, made the [following] determination with respect to all of the factors in that case, which was a [section 288] case. That the victim has been abused over a 15-year period from age 8 to 23, and the Court multiplied the 15 years times [$]50,000 a year in just noneconomic damages for psychological harm but didn't include the specifics with regard[] to what future therapy might be, et cetera.

"The defendant had objected on several grounds including the right that he believed he had to a jury trial, equal protection, et cetera.

"Both of those arguments had no weight with the Court, and the defendant had argued specifically that the award of [$]750,000 did not meet the requirements applied to an award of economic damages; and the award was based on the victim's suffering during years after the crimes were committed. The Court found that neither argument was convincing.

"The standard for awarding economic damages, which, by their nature are more definite, cannot be used to challenge an award for noneconomic damages.

7

"The Court found that the victim's pain and suffering lasted well beyond her childhood, and the Court, in going through the standard for fixing the noneconomic damages, looked to the civil jury instruction because that's where you see noneconomic damages for the most part being addressed. And [it] specifically quoted CACI 3905A stating that 'no fix[ed] standard exists for deciding the amount of damages. You must use your judgment to decide a reasonable amount on the evidence and your common sense.'

"And the Court found that the jury, of course, doesn't make the determination in a criminal case, but [it] did adopt that standard of review. And [it] will -- [it] did affirm the noneconomic damages award that didn't shock the conscience or suggest passion, prejudice or corruption in its issuance and went on and on and on.

"The bottom line is the statutory authority along with the cases that have been cited certainly do support an award in this type of situation for a [section 288.7 case]. The therapist had testified that you were talking about a scenario of $120 per hour right now, which obviously, that, at some point, can go up; and it's impossible for the Court on that end. That noneconomic end as far as future therapy to make a definite award.

"When [the prosecutor] talks about 26 times a year being every other week and perhaps for however many years, it's undetermined. It also could be once a week, once a month, but the Court is left with little guidance with regard to what something like that could be; and there has to be, based on the information presented, some sort of reasonable determination but, as was seen in the *Smith* case, the victimization of the defendant from the time she was a child and then after it stopped when she was an adult, went on and on; and I think the Court -- the trial Court, as upheld by the Court of Appeals [*sic*], came to the right determination.

"In light of the circumstances that the therapist testified to, in light of the information provided in the probation report regarding the nature of the abuse, the victim easily could be in therapy once a week at $120 an hour.

8

"The Court does, in fact, note that for psychological services in this area, including but not limited to an hourly rate for those [who] provide services to the court for [some] issues, usually [is] and can be more than that anyway.  It certainly could be less depending on the circumstances, but I don't think it's in any way, shape or form unreasonable to think that the victim in this case wouldn't be in therapy for, you know, literally the rest of her life.

"And based on this information that's presented, if she were -- and, you know, I don't have actuarial tables on how long people will live.  But if you were in a scenario where things remain static just on a mathematical basis, and it was $120 an hour every other week for a certain number of years and, let's say, just off the top, the victim lived to be -- to go on 50 years, that's [$]156,000 right there.  There is more than enough mathematically to support the $150,000 on an ongoing therapy basis alone, because without a doubt the $120 will go up.  Without a doubt, to some extent, depending on the circumstances, the need for therapy may go down on a weekly or monthly basis, it may go up but that is the conundrum the Court faces.

"On top of that, in light of the horrific circumstances of the case and, in many ways similar to those facts in *Smith* regarding how the defendant came into the victim's mother's life, et cetera, the [$]50,000 times three that [the prosecutor], for the three years of abuse, had presented also supports an award of [$]150,000.  To be able to put a monetary figure on what the victim went through is very difficult but, certainly, if you look at -- as the *Smith* Court did, you look to the civil instruction and you look at the civil awards that people have been given as the *Smith* Court did for circumstances such as this.  Those go into the millions.

"So $150,000 is not at all unreasonable.  It will be ordered, and it will be on both of those bases with respect to ongoing therapy and pain, suffering, et cetera as -- and emotional distress as is allowed for under Civil Code [section] 1431.2[, subdivision] (b)(2), the *Smith* case and Penal Code Section 1202.4[, subdivision] (f)(3)(F)."

9

DISCUSSION

I

*Defendant Did Not Have The Right To A Jury Trial*

Defendant asserts the trial court erred in denying his request for a jury trial to determine the amount of victim restitution. He believes *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435] and its progeny, including *Southern Union Co. v. United States* (2012) 567 U.S. 343 [183 L.Ed.2d 318], establish a federal constitutional right to a jury trial to make findings of fact for determining victim restitution. Alternatively, "accepting characterization of victim restitution as a civil remedy rather than a form of punishment," defendant asserts the trial court violated his right to a jury trial under article I, section 16 of the California Constitution. We find no merit in defendant's arguments.

First, defendant did not request a jury trial, as he argues on appeal. It is clear from the context and discussion in the portion of the record upon which defendant relies that the trial court explained *the defendant in Smith* had requested a jury trial as to the victim restitution in *that* matter, and *that* defendant's request was denied.

Second, accepting but not deciding defendant may raise the issue for the first time on appeal, we find no merit in his argument that he has a jury trial right under the United States Constitution. As defendant notes, a slew of California and federal cases have considered and rejected the argument. Those decisions have made clear the primary purpose of victim restitution is not punishment but instead compensation to victims of crime. (See, e.g., *People v. Pangan* (2013) 213 Cal.App.4th 574, 584-586; *People v. Wasbotten* (2014) 225 Cal.App.4th 306, 308-309; *United States v. Wolfe* (7th Cir. 2012) 701 F.3d 1206, 1215-1218.) Defendant's argument, as presented, does not convince us otherwise.

Third, again accepting but not deciding defendant may raise the issue for the first time on appeal, we find no merit in defendant's assertion he has a jury trial right under the California Constitution. This court rejected this very argument in *Smith*. (*People v.*

10

*Smith*, *supra*, 198 Cal.App.4th at pp. 433-434.) This court explained "[t]he restitution hearing, whether for economic or noneconomic damages, is a criminal sentencing hearing, not a civil trial." (*Id.* at p. 434.) Defendant not only fails to identify and recognize the ruling in *Smith* in his opening brief, but also fails to present any credible argument warranting reconsideration of that opinion.

In sum, we conclude defendant did not have the right to a jury trial as to victim restitution.

## II

### *The Trial Court Did Not Err In Awarding $150,000 In Victim Restitution*

Defendant argues the victim restitution award must be vacated because: (1) the trial court failed to specify the losses to which the order pertained, as required under section 1202.4, subdivision (f)(3); and (2) the order lacked an adequate factual basis. The People argue the restitution award specified the amount was for the victim's noneconomic losses and the record provides a rational basis for the award.

Section 1202.4, subdivision (f)(3) provides, "[t]o the extent possible, the restitution order shall be prepared by the sentencing court, shall identify each victim and each loss to which it pertains, and shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as a result of the defendant's criminal conduct, including, but not limited to, [several specified losses]." Such specified losses include mental health counseling expenses and noneconomic losses, including psychological harm, in cases such as this. (*Id.*, subd. (f)(3)(C) & (F).)

We disagree with the People that the trial court's victim restitution order was based on noneconomic damages alone. The trial court expressly stated the order was based on *both* bases presented by the prosecution, i.e., ongoing therapy and psychological harm. Given the trial court's express statement in that regard, we further disagree with

11

defendant's argument the trial court "failed to specify to which losses the restitution award pertained." (Bolding and capitalization omitted.)

Defendant also argues the restitution award failed to provide "a breakdown" for "the cost of future therapy and awards for ongoing pain and suffering past [*sic*] emotional distress." To the extent defendant attempts to argue the trial court had to attribute a specific monetary value to each loss and failed to do so, we decline to address the cursory argument. Defendant made no such argument in the trial court and thus forfeited the argument on appeal. (See *People v. McCullough* (2013) 56 Cal.4th 589, 594, 597-599.) Indeed, any such argument is not a legal error that can be resolved without reference to the particular sentencing record developed in the trial court. (*Id.* at p. 594.)

We further find no merit in defendant's foundational challenge to the restitution award. "A victim's restitution right is to be broadly and liberally construed." (*People v. Mearns* (2002) 97 Cal.App.4th 493, 500.) "We review a restitution order for abuse of discretion." (*Id.* at p. 498.) " 'When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.' " (*Id.* at p. 499.)

Defendant argues the award lacked an adequate factual basis because: (1) beyond the ascertainable costs for past counseling expenses, the award was "based on neither facts nor a rational method of calculation"; (2) "the trial court needed more evidence than a second hand account from [the victim's] therapist to evaluate how [defendant's] conduct had impacted her life"; and (3) the trial court erroneously "believed *People v. Smith* had promulgated an amount that was a presumptively correct award for noneconomic damages in child sexual abuse cases."

We simply find no basis for concluding the trial court abused its discretion. The trial court was deliberate, specific, and very well apprised of the legal and factual foundations for making the award. Indeed, the trial court's analysis was exceptional.

12

Contrary to defendant's assertion, the trial court did not rely solely upon the victim's therapist's testimony in determining the amount of victim restitution. The trial court explained it considered the therapist's testimony and "the information provided in the probation report regarding the nature of the abuse." Defendant does not challenge the trial court's reliance on the probation report and, as explained *ante*, the trial court was entitled to do so. Nor did the defendant object on any such grounds in the trial court.

The trial court further stated, "the horrific circumstances of the case [which] in many ways [resemble] those facts in *Smith* regarding how the defendant came into the victim's mother's life . . . support[] an award of [$]150,000." In *Smith*, this court considered whether the trial court abused its discretion in awarding the victim in that case $3,265 in economic damages and $750,000 in noneconomic damages. (*People v. Smith*, *supra*, 198 Cal.App.4th at pp. 430-433.) In discussing the noneconomic damages, this court explained we will affirm a noneconomic damages award "that does not, at first blush, shock the conscience or suggest passion, prejudice or corruption on the part of the trial court." (*Id*. at p. 436.)

This court found $750,000 in noneconomic damages for sexual abuse extending over a period of 15 years did not shock the conscience (i.e., $50,000 per year). (*People v. Smith*, *supra*, 198 Cal.App.4th at p. 436.) Defendant does not argue the trial court abused its discretion in analogizing the facts in this case to the facts in *Smith*. Nor do we find any reason to believe the trial court erroneously believed *Smith* promulgated a presumptive noneconomic award in child sexual abuse cases, as defendant asserts. The trial court was familiar with the facts in *Smith* and believed those facts to be like the facts here. The trial court's decision was detailed and well-reasoned.

Defendant further cites *no* legal authority, nor are we aware of any, requiring a trial court to receive the victim's testimony in determining victim restitution. Indeed, the law is to the contrary. (*People v. Arbuckle* (1978) 22 Cal.3d 749, 754 ["A sentencing judge 'may, consistently with the Due Process Clause of the Fourteenth Amendment,

13

consider responsible unsworn or "out-of-court" information relative to the circumstances of the crime and to the convicted person's life and characteristics' "].)

In sum, defendant has failed to present any meritorious argument the trial court erred or abused its discretion in awarding the victim $150,000 in restitution.

## DISPOSITION

The judgment is affirmed.

/s/
Robie, J.

We concur:

/s/
Blease, Acting P. J.

/s/
Renner, J.