Filed 7/13/15  P. v. Roggero CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ANDREW GARDNER ROGGERO,<br><br>    Defendant and Appellant. | F067482<br><br>(Super. Ct. Nos. CRM023445, CRM022958, & CRM021351)<br><br>**OPINION** |

## THE COURT*

APPEAL from a judgment of the Superior Court of Merced County.  Donald J. Proietti and Mark Bacciarini, Judges.†

John Doyle, under appointment by the Court of Appeal, for Defendant and Appellant.

---

\*       Before Franson, Acting P.J., Peña, J. and Smith, J.

†       Judge Proietti presided over appellant's change of plea hearing in which he admitted most of the allegations in two criminal actions.  Judge Bacciarini presided over appellant's jury trial for an arson allegation and sentenced him.

Kamala D. Harris, Attorney General, Dane R. Gillette and Gerald A. Engler, Chief Assistant Attorneys General, Michael P. Farrell, Senior Assistant Attorney General, Daniel B. Bernstein and Alice Su, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## PROCEDURAL SUMMARY

Appellant, Andrew Gardner Roggero, was charged in a second amended information filed on November 14, 2012, with second degree burglary (Pen. Code,[1] § 459, count 1), two counts of grand theft (§ 487, subd. (a), counts 2 & 3), arson (§ 451, subd. (d), count 4), vehicle theft (Veh. Code, § 10851, subd. (a), count 5), and receiving stolen property (Pen. Code, § 496, subd. (a), count 6). The second amended information further alleged that appellant committed the offenses while released on bail (§ 12022.1, subd. (b)) and was eligible for two prior prison term enhancements (§ 667.5, subd. (b)).[2]

On November 14, 2012, in a hearing before Judge Proietti, appellant agreed to admit all of the allegations in the second amended information except for the arson count, as well as the sale of marijuana allegation in the unrelated criminal action. Judge Proietti told appellant his indicated sentence without the arson allegation, but including all of the admitted allegations, was eight years.

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

[2]     On September 20, 2012, appellant was charged in an information in Merced Superior Court case No. CRM022958, an unrelated action, with possession of marijuana for sale (Health & Saf. Code, § 11359). The information further alleged that he was eligible for two prior prison term enhancements. The instant action began as a single grand theft allegation in criminal complaint filed in February 2012, in case No. CRM021351. On October 11, 2012, the trial court granted the prosecutor's motion to consolidate this action with the possession of marijuana case and case No. CRM021351 with the instant action.

Appellant executed an advisement of rights, waiver, and plea form for felonies acknowledging the consequences of his plea and his constitutional rights pursuant to *Boykin v. Alabama* (1969) 395 U.S. 238 and *In re Tahl* (1969) 1 Cal.3d 122.  Appellant waived his constitutional rights and agreed to admit all of the allegations against him in the two pending criminal actions except for the arson allegation.  Appellant executed a change of plea form in the instant action as well as the sale of marijuana case.  Appellant did not initial or agree to a waiver of his rights pursuant to *People v. Arbuckle* (1978) 22 Cal.3d 749 (*Arbuckle*) in either plea form.  The prosecutor did not sign the plea form and lodged her objection to the trial court taking appellant's plea.  Judge Proietti informed appellant that he would "need to be the judge who imposes sentence," there was no guarantee appellant would receive the indicated sentence, and there would be no *Arbuckle* waiver.  The court established a factual basis for the plea and appellant pled no contest to the allegations in both cases except for the arson allegation in count 4.

A jury trial on the arson allegation began on January 23, 2013, presided over by Judge Bacciarini.  At the close of the prosecution's case, the trial court denied appellant's motion for a judgment of acquittal pursuant to section 1118.1.  The jury convicted appellant of arson on January 25, 2013.

On April 30, 2013, Judge Bacciarini sentenced appellant to the upper term of three years on count 1.  The court sentenced appellant to consecutive sentences of eight months (one third the midterm) on each of counts 3, 4, and 5.  The court sentenced appellant to a consecutive sentence of eight months (one third the midterm) in case No. CRM022958.  The court stayed appellant's sentences on counts 2 and 6 pursuant to section 654.  The court imposed consecutive sentences of two years for the on-bail enhancement and one year for each of the two prior prison term enhancements.  Appellant's total prison term is nine years eight months.

Appellant was awarded actual custody credits of 407 days, conduct credits of 406 days, and total custody credits of 813 days. Judge Bacciarini imposed a restitution fine of $2,520 and direct victim restitution of $24,640. Defense counsel then argued to the court that there was a plea bargain for seven years four months on everything but the arson charge.[3] The court informed counsel there was no plea bargain between the defense and the prosecution and appellant had pled straight up to all of the pending allegations except the arson charge. The court noted that Judge Proietti made no sentencing guarantee and appellant's recidivism supported the upper term on count 1. When defense counsel told the court he wanted to make a motion for the defendant to withdraw his plea, the court found it lost jurisdiction and denied the motion. Judge Bacciarini later denied appellant's motion for a certificate of probable cause to challenge the plea agreement.

Appellant contends the trial court erred in denying his acquittal motion on the arson allegation. We disagree and affirm the judgment. In supplemental briefing, appellant further contends that the sentencing judge failed to adhere to the terms of the plea agreement and he was sentenced by the wrong judge in violation of *Arbuckle*. We find merit to appellant's *Arbuckle* argument.

## FACTS

*Prosecution Case*

On February 10, 2012, Bill Cook, who worked as the operations manager for Wilbur-Ellis Company in Merced County, was notified that the company had been burglarized.[4] A Freightliner truck that was stolen was tracked by computer using its global positioning system (GPS) to appellant's address. Cook knew appellant's address.

---

[3]    Counsel forgot to add the eight month sentence for the marijuana conviction in the unrelated criminal action.

[4]    Further date references are to the year 2012.

The company uses GPS systems for its tractors to plow straight rows in fields. Part of the tractor GPS was made of metal. A GPS for a tractor was also stolen. Other pieces of farm equipment that belonged to Wilbur-Ellis, including fertilizer knives and clamps, a tool bar, and the bay station base of a GPS antenna that sits on the ground, were retrieved from Atwater Iron & Metal. Other parts of the GPS antenna were also found. Cook retrieved only some of the property that was stolen. The rest already had been cut up. Approximately 20 gallons of fuel was also stolen.

Timothy Warner worked as ranch coordinator for Wilbur-Ellis and was responsible for dispatching the company's trucks. Warner explained that the GPS for the Freightliner truck placed it at 897 Roosevelt Road in El Nido at 4:30 a.m. the morning of the burglary.

Merced County Sheriff's Deputy Herman Prock was one of the deputies who investigated the burglary and photographed a shoe impression left on the Wilbur-Ellis property.[5] This photograph was admitted as People's exhibit 108. Detective Erick Macias went to 897 Roosevelt Road the day of the burglary but there was no residence there. The closest residence was appellant's home at 923 Roosevelt Road in El Nido. Macias found tire impressions leading up to appellant's house that were consistent with a Freightliner. The Freightliner, however, was no longer at appellant's residence and was found at another location.

Macias received a search warrant for appellant's home and executed it that afternoon. While searching appellant's bedroom, Macias came across black tennis shoes with a V pattern on the tread. Photographs of the shoes, including the V pattern on the tread were admitted as People's exhibits 122 and 124. Macias also found a sweatshirt that smelled like diesel fuel. Macias described the bedroom as messy and a pigsty.

---

[5] All references to law enforcement are to deputies and detectives of the Merced County Sheriff's Department.

There were other bedrooms in the home but appellant's bedroom appeared to be the one being lived in and the clothing appeared to belong to a man. There was no women's clothing in the room Macias believed belonged to appellant.

Although Macias thought he probably saw the burn pile, or burn pit, while executing the search warrant, he did not think to actually check it on February 10. Macias did not see smoke or active burning on the appellant's property when executing the search warrant. Appellant denied being at Atwater Iron & Metal. Appellant identified the residence on Roosevelt as his and said he had been living there and also in his father's house on Gettysburg in Merced. Appellant identified all of the items in the Roosevelt residence as belonging to him.

Philip Toews worked as the purchasing manager for Atwater Iron & Metal, a scrap metal recycling business. At 7:30 a.m. on February 10, appellant arrived at the business with Eugene Leonardo in a white truck to recycle some items. Metal transactions require identification. Appellant did not want to use his own identification because he said it was expired, so Leonardo used his identification. Toews had appellant and Leonardo go out to unload the metal. Because law enforcement had contacted Toews that there was an alert for Leonardo, Toews contacted the sheriff's department.

Detective Roy Tighe received Toews's call at 7:35 a.m. on February 10. On February 14, Toews sent pictures by email to Tighe of the property brought by appellant and Leonardo four days earlier. Tighe explained that recyclers prefer copper without insulation on it because "bright and shiny copper" is sold by the pound and "brings a higher dollar value because the recycler doesn't have to clean any of that material up" before sending it off. Recyclers either strip the insulation off the wire by slicing it with some type of razor blade, pull it off, or burn it.

Tighe and Macias went back to appellant's residence and met Lorna Morehouse there. Morehouse was also known to recycle metal and was appellant's girlfriend.

6

Macias learned that Morehouse had been taking appellant to recycling locations and recycling material in her name. When the detectives asked Morehouse if she knew anything about the tractor GPS, she initially said that she did not know anything about it. Later, Morehouse told the detectives that they should check the bushes or the burn pit. Morehouse showed the detectives the burn pile. Tighe and Macias dug into the burn pile and found the GPS unit.

Tighe did not immediately recognize the object as a GPS and got completely dirty handling the burnt items. There was no active fire in the burn pit. One of the items in the pile, however, had some type of antenna looking device and the detectives thought it might be part of the GPS. Photographs of the appellant's property, the burn pit, and objects in the burn pile were admitted into evidence and shown to the jury.

People's exhibit 111 depicted part of the GPS device found by the detectives. Tighe described it being with or underneath other stuff that was burnt in the burn pile. There were burnt cables on the GPS, and areas where the insulation had not burned away. There were other cables and insulation on the GPS that had not been completely burned off.

Macias prepared a property inventory sheet showing that the GPS was stolen and recovered, meaning that it had been located. According to Macias, the GPS was under debris in the burn pile and was not really buried. Macias and Tighe did not have to dig very deep with a shovel or a pitchfork to find it. Macias looked for a serial number on the GPS, but it was hard to locate "with the way it was destroyed." The parties stipulated to the jury that appellant was convicted of the theft offenses referred to by the witnesses during the trial.

*Defense Case*

Appellant's father, Anthony Roggero (Anthony), testified that appellant lived with him on Gettysburg Avenue in Merced for the past few years, including during February

2012. No one was living at 923 Roosevelt Road in El Nido, though people, including Anthony and appellant, occasionally stayed there. In late 2011 or early 2012, Anthony and his son dismantled a mobile home on the Roosevelt property and recycled it. Some parts of the mobile home, including electrical wiring, were left over and physically on the ranch.

There were two burn piles on the ranch. Anthony explained he had a burn permit and used the pits to burn tumbleweeds, clippings, and ditch bank grass, but nothing else was burned in the burn piles. There was a lot of material in the burn pits, but Anthony had not burned anything recently because there were no burn days in January and February. Anthony was the only person authorized to burn on the ranch and he never burned metal or wire and had never seen anyone else do so on the property.

Anthony was not on the ranch on February 10. Appellant was arrested on February 11. Anthony was not at the ranch that day. Anthony had been on the ranch on the Tuesday or Wednesday following the Super Bowl, which was played on February 5. The door to the house was broken. Anthony went to the property on Tuesday the seventh or Wednesday the eighth. Anthony reported the incident with the door to the ranch house within a day or two after he noticed it. Anthony was told by investigators that the door was broken down during the execution of a search warrant.

### Rebuttal Testimony

John McLaughlin lived near 923 Roosevelt Road and was familiar with the property. McLaughlin smelled fires on that property and remembered seeing black smoke and the smell of plastic, burnt wire. McLaughlin explained that insulation on electrical wire has a distinct smell he will never forget.

## REVIEW OF SECTION 1118.1 MOTION

Appellant contends the trial court erred in denying his section 1118.1 motion for acquittal on the arson allegation. Appellant argues there is reasonable doubt that he

committed the arson because Morehouse and Leonardo were also involved in helping him sell the property he had stolen. We disagree.

When a defendant brings a motion pursuant to section 1118.1, the trial court applies the same standard as an appellate court reviewing the sufficiency of the evidence. The court must consider whether there is substantial evidence of each element of the charged offense sufficient for a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt. We review the trial court's ruling independently. (*People v. Harris* (2008) 43 Cal.4th 1269, 1286; *People v. Cole* (2004) 33 Cal.4th 1158, 1212-1213.) The same standard applies in cases where the prosecution relies primarily on sufficiency of the evidence. (*People v. Young* (2005) 34 Cal.4th 1149, 1175.)

Under section 451, a person is guilty of arson when he or she willfully and maliciously sets fire to or burns, or causes to be burned, any structure or property. Arson is a general intent crime requiring intent to willfully commit the crime of setting on fire under such circumstances that the direct, natural, and highly probable consequences would be for the burning of the structure or property. (*People v. Atkins* (2001) 25 Cal.4th 76, 88-89.)

The intent to which one acts is rarely susceptible of direct proof and must be inferred from the facts and circumstances surrounding the offense. (*People v. Massie* (2006) 142 Cal.App.4th 365, 371.) Circumstantial evidence may be relied upon to establish culpability for arson. Significant factors include prior presence in the building, or in this case the property, evidence of intentional incendiary cause, lack of evidence showing natural or accidental cause, and more than one fire with temporal or spatial proximity. (*People v. Belton* (1980) 105 Cal.App.3d 376, 379-380.)

In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence -- evidence that is reasonable, credible, and of solid value

9

such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. The standard of review is the same in cases in which the prosecution relies mainly on circumstantial evidence. It is the jury, not the appellate court, which must be convinced of a defendant's guilt beyond a reasonable doubt. If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment. (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11; see also *Jackson v. Virginia* (1979) 443 U.S. 307, 317-320 and *People v. Johnson* (1980) 26 Cal.3d 557, 578.)

In reviewing a challenge to the sufficiency of the evidence, appellate courts do not determine the facts. We examine the record as a whole in the light most favorable to the judgment and presume the existence of every fact the trier of fact could reasonably deduce from the evidence in support of the judgment. (*People v. Guerra* (2006) 37 Cal.4th 1067, 1129 [questioned on another ground in *People v. Rundle* (2008) 43 Cal.4th 76, 151].) Unless the testimony of a single witness is physically impossible or inherently improbable, it is sufficient for a conviction. (Evid. Code, § 411; *People v. Young* (2005) 34 Cal.4th 1149, 1181.)

An appellate court must accept logical inferences that the jury might have drawn from circumstantial evidence. (*People v. Maury* (2003) 30 Cal.4th 342, 396.) Before setting aside the judgment of the trial court for insufficiency of the evidence, it must clearly appear that there was no hypothesis whatever upon which there was substantial evidence to support the verdict. (*People v. Conners* (2008) 168 Cal.App.4th 443, 453; *People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.)

Appellant argues that his father claimed ownership of 923 Roosevelt Road in El Nido, he lived in Merced, he was arrested on February 11 and could not have burned the GPS while in jail, and the burn pit had not been recently used. Appellant argues that

10

Morehouse and Leonardo were involved in assisting him with the sale of stolen items to recyclers and could have been responsible for the arson.

Early on the morning of February 10, a Freightliner truck, farm equipment, diesel fuel, and a GPS for a tractor were stolen from the Wilbur-Ellis Company in Merced County. The operations manager located the position of the truck by its own GPS system next to appellant's property at 923 Roosevelt Road in El Nido and that it had been stolen about 4:30 that morning.

Detective Macias went to the adjoining property, did not find the Freightliner, but saw tire tracks consistent with a Freightliner at 923 Roosevelt Road. After executing a search warrant at the Roosevelt property, officers found a bedroom that appeared to be occupied by a male. Officers found a pair of tennis shoes with a tread pattern consistent with a shoe print impression made at the Wilbur-Ellis property, and clothing that smelled like diesel fuel which had been stolen from Wilbur-Ellis that day.

At 7:30 a.m. on February 10, appellant and Leonardo brought property from the Wilbur-Ellis theft for recycling at Atwater Iron & Metal. The purchasing manager for the recycling company notified the sheriff's department at 7:35 the morning of February 10, that appellant and Leonardo were present at the business recycling metal. Some of the items they recycled were stolen from Wilbur-Ellis, including part of an antenna system for a GPS. Appellant would not use his identification during the transaction but relied on Leonardo's identification.

Although Detective Macias did not notice whether there was a burn pit on the 923 Roosevelt property on February 10, he did not think at that time to look for one. Four days later, Morehouse actually told the detectives about the location of the burn pit as they were questioning her about the possible location of the tractor GPS. Detectives Macias and Tighe located a burn pit on the property with a GPS that had been burned and disfigured toward the top of the burn pit. In Tighe's experience, recyclers strip off or

11

burn off the insulation on metal and copper wire because it is more valuable that way. Although appellant's father denied conducting any burns at 923 Roosevelt in early 2012, and Detective Macias did not notice a recent fire, a neighbor testified that he smelled burning insulation more than once on the property.

Freightliner tire tracks and a foot impression that matched appellant's tennis shoes were left behind on the Wilbur-Ellis property. The Freightliner was parked next to appellant's property. Appellant recycled property actually stolen the day appellant recycled it. Clothing in appellant's bedroom smelled like diesel fuel. Appellant admitted to the detectives that he lived at 923 Roosevelt Road and the property at the residence was his. The burned and missing tractor GPS was located in a burn pit on appellant's property. The trial court and the jury could reasonably infer from these facts that appellant possessed and controlled the items found in the burn pit.

Nearly every piece of evidence presented by the prosecution at trial linked appellant to the burn pit and the burned GPS unit, including appellant's admission to the investigating detectives that he lived at 923 Roosevelt Road and the property in the residence belonged to him. Appellant, for instance, did not present his identification at the recycling business but had Leonardo do so.

Although the burn pit was not discovered until four days after the theft of Wilbur-Ellis property, Detective Macias explained that he did not think to look for a burn pit on appellant's property during the execution of the search warrant on February 10. Had the GPS been burned on February 10, a day prior to appellant's arrest and incarceration, the fire would likely be cold four days later when the GPS was found. Contrary to testimony from appellant's father, a neighbor testified that he could smell burning insulation and saw black smoke emanating from burn pits on appellant's property. Detective Tighe testified that burning off insulation from wire and metal makes it more valuable to

12

recyclers. The jury could reasonably infer that appellant burned the GPS to destroy the trail of evidence linking him to the burglaries as well as to harvest recyclable metal.

Appellant has marshaled the exculpatory evidence from the trial.[6] On appeal, however, we do not review the evidence de novo. We give deference to the express and implied factual findings of the jury and to the trial court's review of the evidence in the appellant's motion for acquittal.

The prosecution's evidence is understandably circumstantial because no independent witness watched the tractor GPS being burned. There was substantial evidence in this case from which the jury could reasonably infer that appellant's theft of farm equipment property and diesel fuel from Wilbur-Ellis were linked to the arson and that appellant was the perpetrator of the arson. The trial court did not err in denying appellant's motion for acquittal. The jury was entitled to give the evidence, including exculpatory defense evidence, the weight it believed the evidence deserved. Viewed in the light most favorable to the prosecution's case, the evidence presented was sufficient and substantial enough to establish appellant's guilt for committing arson beyond a reasonable doubt.

### *ARBUCKLE* ERROR

Appellant contends that his plea agreement was violated when Judge Bacciarini sentenced him to a longer prison term of nine years eight months rather than Judge Proietti's indicated sentence of eight years eight months, which included Judge Proietti's indicated sentence for arson. Appellant further contends Judge Bacciarini violated the rule announced in *Arbuckle* by sentencing him rather than having Judge Proietti impose sentence. We find merit in appellant's allegation of *Arbuckle* error.

---

**6** We note that appellant's acquittal motion was filed prior to the case presented by the defense.

13

The parties' supplemental briefs present lengthy argument concerning whether Judge Bacciarini properly exercised his sentencing discretion and whether he still retained jurisdiction after imposing sentence to entertain a motion by appellant to withdraw his plea.  We find, however, that these issues are superseded by the holding of *Arbuckle* as discussed by the appellant in his addendum to the supplemental brief.

The California Supreme Court held in *Arbuckle* that where a plea bargain is entered with the expectation the judge taking the plea will also sentence the defendant, essentially as a term of the bargain, it is error for another judge to sentence the defendant. *Arbuckle* noted that the judge who took the defendant's plea repeatedly used the personal pronoun when referring to sentencing as the judge took the defendant's change of plea. *Arbuckle* found that the propensity in sentencing "demonstrated by a particular judge [was] an inherently significant factor in the defendant's decision to enter a guilty plea" and the judgment was reversed for further proceedings.  (*Arbuckle*, *supra*, 22 Cal.3d at pp. 756-757.)

The People argue that *Arbuckle* is inapplicable in this case because here there was not a negotiated plea bargain between the parties, the prosecutor objected to the plea agreement, and appellant failed to object to Judge Bacciarini sentencing him.  In *People v. Clancey* (2013) 56 Cal.4th 562 (*Clancey*), the California Supreme Court reviewed the circumstances in which a trial court enters into an improper plea agreement without the consent of the prosecutor who acts as the representative of the executive branch of government.  (*Id*. at pp. 569-588.)

Our high court's analysis in *Clancey* started with the foundational point that the charging function is entrusted to the executive.  Courts have no authority to substitute themselves as the People's representative in the negotiation process under the guise of plea bargaining to agree to a disposition of a case over the prosecutor's objection. (*Clancey*, *supra*, 56 Cal.4th at p. 570.)  Where, however, the defendant pleads guilty to

all of the charges leaving only the pronouncement of judgment and sentencing, there is no requirement for the People to consent to a guilty plea. In such a circumstance, the court may indicate its proposed sentence with confirmation of a given set of facts, "'irrespective of whether guilt is adjudicated at trial or admitted by plea.'" (*Ibid*.)

The prosecutor objected to the court's indicated sentence in *Clancey* because, outside of agreement by the People, the trial court offered to strike a prior serious felony allegations as well as on-bail enhancements, and impose a reduced sentence. (*Clancey*, *supra*, 56 Cal.4th at pp. 568-569.) Here, Judge Proietti accepted appellant's plea of no contest to all of the counts and all of the allegations in the theft case and the sale of marijuana case, except for the arson allegation. Judge Proietti did not dismiss the arson allegation, appellant agreed to have a trial on that count.

Unlike the prosecutor in *Clancey* who did not agree to the dismissal of strikes allegations and on-bail enhancements, the prosecutor here had no count or enhancement dismissed when Judge Proietti accepted appellant's no contest plea. The one count that was not resolved by the plea agreement was the arson allegation, but this count was set for trial and was not dismissed. The People do not currently argue that Judge Proietti entered into an improper plea agreement with appellant in violation of the process set forth in *Clancey* and we find no violation by Judge Proietti of the limitations on judicial plea agreements as examined in *Clancey*.

Because appellant admitted or was tried on every allegation in the pending criminal actions against him, there was no requirement for the People to consent to appellant's no contest plea and Judge Proietti did not err in indicating what his sentence would be depending on the confirmation of a given set of facts. As explained in *Clancey*, the circumstances of the instant no contest pleas and admissions by appellant constituted an exception to the requirement that the People affirm the plea agreement. The plea agreement reached by appellant and Judge Proietti was equivalent to a plea bargain

15

between a defendant and the prosecutor. An express term of the agreement was that Judge Proietti sentence appellant. Although the prosecutor objected to a plea agreement, she did not object to Judge Proietti's announcement that he would have to sentence appellant.

For these reasons, we find the *Arbuckle* rule applicable to the instant action. We therefore reject the People's assertion that there is no *Arbuckle* issue here because there was no plea bargain between the parties and appellant has relinquished his right to raise this issue on appeal.

Where, as here, there were no dismissed allegations, it appears that an important condition to appellant admitting the allegations was that he be sentenced by Judge Proietti. In accepting appellant's plea to the theft offenses, sale of marijuana allegation, and the alleged enhancements, Judge Proietti noted that the two plea forms were executed by appellant and they indicated "there will be no Arbuckle Waiver." Judge Proietti further stated, "So this court will need to be the judge who imposes the sentence." This statement was equivalent to use of the personal pronoun in setting forth who would sentence appellant. We again observe that although the prosecutor objected to the taking of appellant's plea, she did not specifically object to Judge Proietti's statement that he would preside over the sentencing hearing.

From the plea forms executed by appellant and Judge Proietti's statement that he would need to be the judge who imposes sentence, we conclude that appellant was induced to admit all of the allegations against him, except for the arson count, because he anticipated Judge Proietti would impose sentence. The plea by appellant was entered in expectation of, and reliance upon, a sentence being imposed by the same judicial officer.[7]

---

[7] The parties and Judge Proietti apparently contemplated that Judge Proietti would try the arson allegation, although he noted that the time set for a trial of the arson count potentially conflicted with another scheduled trial.

(See *In re Mark L.* (1983) 34 Cal.3d 171, 177.) Appellant did not expressly or impliedly waive his *Arbuckle* right at the change of plea hearing.

The People further argue that appellant waived his right to have Judge Proietti sentence him by failing to object to Judge Bacciarini conducting the sentencing hearing. In *People v. Horn* (1989) 213 Cal.App.3d 701 (*Horn*), this court found that mere silence alone does not constitute waiver of the right to enforce an implied term of an agreement. (*Id.* at p. 709.) *Horn* reasoned, however, that the right to be sentenced by a particular judge is not automatically assumed and whether it is express or implied, there must be affirmative evidence in the record to show it is a term of the plea agreement. (*Id.* at pp. 704-710.) The court in *Horn* found that a defendant's failure to object to a different judge sentencing him than the judge who took his plea, could constitute waiver where there was no indication in the record that being sentenced by a particular judge was a term of the plea agreement. (*Id.* at p. 710.)

In the instant action, in contrast to *Horn*, there is express and affirmative evidence that a condition of appellant entering his no contest pleas and admitting the alleged enhancements was being sentenced by Judge Proietti. Appellant's failure to raise this point to Judge Bacciarini, therefore, did not constitute a waiver of his *Arbuckle* right. Accordingly, Judge Bacciarini's sentence is vacated and the matter is remanded for resentencing.[8] We note that Judge Proietti's sentence was an indicated sentence, not a guarantee of a particular term in state prison.

---

[8]     Because we find *Arbuckle* error, we do not reach the issue discussed by both parties that Judge Bacciarini erred in denying appellant an opportunity to withdraw his plea or the effect of appellant not being advised pursuant to section 1192.5. We observe that absent a section 1192.5 admonition, courts cannot assume a defendant knew he or she had the right to withdraw a plea. (*People v. Walker* (1991) 54 Cal.3d 1013, 1026 [overruled on another ground in *People v. Villalobos* (2012) 54 Cal.4th 177, 183].)

17

## DISPOSITION

The appellant's convictions are affirmed.  The appellant's sentence is vacated and the case remanded to Judge Proietti to conduct a new sentencing hearing.