Filed 8/2/23

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D080369 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CR40676) |
| RAMON DEL RIO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Peter C. Deddeh, Judge.  Reversed.

Daniel J. Kessler, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Eric A. Swenson, Alan L. Amann and Heather M. Clark, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

Ramon Del Rio appeals from the trial court's decision to redesignate robbery as the basis for his conviction after granting Del Rio's petition to

vacate his two first degree murder convictions under Penal Code[1] section 1172.6 (formerly section 1170.95).[2] Del Rio contends the trial court violated his due process rights because he had no notice the court might take this action. He further argues the robbery conviction is not supported by substantial evidence in the record. We agree the lack of notice and substantial evidence supporting the robbery conviction warrant reversal. We therefore remand the case for further proceedings consistent with this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

On June 16, 1977, the San Diego District Attorney filed an information charging Del Rio with three counts of murder. The first two counts alleged that Del Rio murdered Ronald W. and Helen R. in violation of section 187.[3] In 1978, a jury convicted Del Rio of two counts of first degree murder, and the trial court subsequently sentenced him to two concurrent, indeterminate life terms in prison. This court affirmed the judgment in an unpublished opinion. (*People v. Del Rio* (May 16, 1979, 4 Crim. No. 8866).)

Del Rio filed a petition for resentencing pursuant to section 1172.6 in January 2019. The trial court denied the petition. Del Rio appealed, and this court reversed and remanded the case with directions to issue an order to show cause and conduct an evidentiary hearing. (*People v. Del Rio* (Aug. 5, 2021, D078225) [nonpub. opn.].)

---

[1]     Statutory references are to the Penal Code unless otherwise specified.

[2]     Assembly Bill No. 200 (Stats. 2022, ch. 58, § 10) renumbered section 1170.95 to 1172.6, effective June 30, 2022.

[3]     The third count was dismissed in August 1980, and is not at issue in the instant appeal.

2

In their response to the trial court's order to show cause, the People explained that, because the transcript of the jury trial was no longer available and section 1172.6 limited what other evidence was admissible at the hearing, they were prevented from proving beyond a reasonable doubt that Del Rio was ineligible for resentencing. Accordingly, the People submitted that Del Rio was "entitled to relief pursuant to Penal Code section [1172.6]." The responsive brief did not request that the trial court redesignate robbery or any other underlying felony for resentencing purposes.

At the evidentiary hearing, the People submitted because they did not have a trial transcript. Based on this representation that the People did not have any admissible evidence, the court stated, "I'm going to vacate the conviction, and therefore, that means Mr. Del Rio will be released." The People then asked the court to reimpose any remaining charges and resentence on those offenses. But they acknowledged that they were "kind of in a quandary because the Court has to resentence on something that [*sic*] we don't have any evidence in front of us to do so." The People then indicated their view that, because they were technically in a resentencing phase, and the court could thus rely on reliable hearsay evidence, the court should consider the facts laid out in a February 2, 1978 probation officer's report in choosing an offense to redesignate.

The trial court did not expressly address this argument, but it vacated the now 45-year-old murder convictions and indicated it would sentence Del Rio on a robbery conviction. Del Rio's counsel objected on the grounds that there was no evidence Del Rio was ever charged with robbery, no evidence suggesting the theory behind the murder conviction, and no reliable evidence that Del Rio was guilty of robbery. The court proceeded with redesignating robbery as the basis for conviction, then resentenced Del Rio to a middle term

of three years, with credit for time served, and imposed a parole term of up to two years.[4] After the court rendered its decision, Del Rio objected, "There was no robbery, sir. . . . [¶] . . . [¶] There's no reason to give me any kind of sentence, you know, that I didn't do. . . . [¶] . . . [¶] I don't understand."

## DISCUSSION

### A. *Senate Bill No. 1437 and Section 1172.6*

Effective January 1, 2019, Senate Bill No. 1437 (Stats. 2018, ch. 1015, §§ 2-4; 2017-2018 Reg. Sess.) (Senate Bill 1437) narrowed liability for murder under the felony-murder rule and natural and probable consequences doctrines and "create[d] a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief." (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) The result is that Senate Bill 1437 "ensure[s] that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (*People v. Anthony* (2019) 32 Cal.App.5th 1102, 1147.) As the Legislature itself declared, the purpose of section 1172.6 was to "more equitably sentence offenders in accordance with their involvement in homicides" and comply with the "bedrock principle of the law and of equity that a person should be punished for his or her actions according to his or her own level of individual culpability." (Stats. 2018, ch. 1015, § 1; *People v. Ramirez* (2019) 41 Cal.App.5th 923, 931.)

When a trial court reviews a petition for resentencing, the court first determines if the petitioner has shown a prima facie case for relief under the

---

[4] The new abstract of judgment reflects that the trial court amended the information to include a fourth count for robbery and then convicted Del Rio of that charge.

4

statute.  (§ 1172.6, subd. (c).)  If the petitioner meets the prima facie burden, the court must issue an order to show cause and hold an evidentiary hearing on the petition.  (*Id.*, subds. (c) & (d)(1); *Lewis, supra,* 11 Cal.5th at p. 962.) At this stage of the proceeding, the prosecution has the burden of proving "beyond a reasonable doubt[ ] that the petitioner is ineligible for resentencing."  (§ 1172.6, subd. (d)(3); *People v. Martinez* (2019) 31 Cal.App.5th 719, 724.)

If the prosecution fails to sustain its burden of proof, the court must vacate the conviction and resentence the petitioner on the remaining charges. (§ 1172.6, subd. (d)(3).)  "The petitioner's conviction shall be redesignated as the target offense or underlying felony for resentencing purposes if the petitioner is entitled to relief pursuant to this section, murder or attempted murder was charged generically, and the target offense was not charged." (*Id.*, subd. (e).)  The newly resentenced petitioner shall be given credit for time served but may be subjected to parole supervision for up to two years. (*Id.*, subd. (h).)

The theory underlying the statute is that individuals not proven to have had the requisite level of malice should be convicted of the underlying felony supported by the evidence, not murder.  This theory presupposes that the evidence presented at trial clearly indicates what target offense the petitioner committed, even if that offense was not charged.  In many cases, the jury reached a murder verdict but also found the defendant guilty of the underlying felony beyond a reasonable doubt, so there is no question as to which crime should be redesignated to support the conviction.  (§ 1172.6, subds. (d)(1) & (3).)  But section 1172.6 does not provide guidance where, as here, a jury did not find the defendant culpable of another offense, and the

5

prosecution was unable to provide admissible evidence of any underlying felonies at the resentencing hearing.

B. *The Trial Court Violated Del Rio's Due Process Rights by Redesignating the Conviction as a Robbery Without Notice and an Opportunity to be Heard*

Del Rio first contends the trial court violated his due process rights under the Fifth and Fourteenth Amendments by redesignating the uncharged and unadjudicated offense of robbery as the basis for his conviction, without notice and an opportunity to be heard, and then resentencing him on the robbery conviction. The People do not dispute that Del Rio was entitled to notice, but they maintain that he did, in fact, receive appropriate notice that he might be resentenced on the crime of robbery.

"We review procedural due process claims de novo because ' " 'the ultimate determination of procedural fairness amounts to a question of law.' " ' " (*Kwan Software Engineering, Inc. v. Hennings* (2020) 58 Cal.App.5th 57, 82.)

In *People v. Silva* (2021) 72 Cal.App.5th 505 (*Silva*), the First Appellate District considered whether a petitioner was entitled to any due process protections during the section 1172.6 redesignation and resentencing process. (*Silva*, at p. 522.) It noted that "the resentencing judge retains much discretion to impose a range of possible sentencing choices, and his or her discretionary choices have a direct impact on the petitioner's liberty interests, depending on the choice of redesignated crime(s) and the structure of the sentence imposed." (*Id.* at p. 523.) For this reason, the court concluded "the protections for 'life, liberty, or property' embodied in the due process clauses of the Fifth and Fourteenth Amendments demand fundamental fairness in a section [1172.6] resentencing." (*Ibid.*) Accordingly, the court determined that "a redesignation and resentencing procedure that abandons the most

6

basic tenets of notice and an opportunity to be heard would be fundamentally unfair and would violate due process." (*Ibid.*)

The *Silva* court held "that as a matter of procedural due process Silva was entitled to know, reasonably in advance of the court resentencing him, which crimes the prosecution sought to have redesignated as underlying felonies, the length of sentence the prosecution proposed, and how that recommended sentence was calculated." (*Silva, supra,* 72 Cal.App.5th at p. 523.) The People do not challenge application of this holding to the instant appeal, and we agree this standard adequately protects Del Rio's constitutional rights.

The question then is whether the People or the trial court provided adequate notice in this case. The People submit that Del Rio received appropriate notice because his counsel was aware prior to the resentencing proceeding of a 1977 probation report regarding dismissed count three, the 1978 probation report, this court's 1979 opinion in *People v. Del Rio*, *supra*, 4 Crim. No. 8866, and this court's more recent opinion in *People v. Del Rio*, *supra*, D078225. In the People's view, the procedural history in this court's opinions in particular "ma[de] it clear that appellant was prosecuted on a felony murder theory based on his participation in the robbery" and, thus, Del Rio had adequate notice that the prosecution would seek resentencing based on robbery.

We are not persuaded by this argument. As the *Silva* court pointed out, "[u]nless we assume the Legislature intended to enact a scheme forcing the petitioner to guess what redesignated offense he faces, his right to avail himself of the opportunity to offer 'new or additional evidence' at a [section 1172.6,] subdivision (d)(3) hearing—should he chose to do so—is meaningless absent some form of notice. Notice is required so he may prepare to meet the

7

arguments and evidence presented by the prosecution and to argue that a different crime was the underlying felony or target offense." (*Silva, supra,* 72 Cal.App.5th at pp. 523-524.) Guess is precisely what the People asked Del Rio to do. The People acknowledged in advance of the hearing that Del Rio was entitled to relief because they did not have evidence to prove beyond a reasonable doubt that he was ineligible for resentencing. But they did not state an intention to redesignate any other offenses. As a result, Del Rio's counsel expressed the understanding that it would not be appropriate for the court to resentence Del Rio based on other potential crimes.

Even if Del Rio may have speculated that the People would seek to designate robbery as the underlying felony supporting the conviction, and even if mere speculation satisfied procedural due process requirements, the People did not provide Del Rio notice as to (1) whether they would request redesignation of robbery as to both murder victims or only one, (2) how long the proposed sentence would be, or (3) how that recommended sentence would be calculated. In *Silva*, the reviewing court concluded the prosecution satisfied the notice requirement because the prosecutor provided Silva with an updated resentencing memorandum nine days before the hearing. (*Silva, supra,* 72 Cal.App.5th at p. 525.) The memorandum detailed the resentencing proposal and how the proposed 24-year sentence had been calculated. (*Ibid.*) Silva's counsel also had time to file a written response. (*Ibid.*) In *People v. Howard* (2020) 50 Cal.App.5th 727, the parties *agreed* to the underlying felony before the hearing. (*Id.* at p. 730.) Here, the People did not serve a resentencing memorandum "reasonably in advance of the court resentencing [Del Rio]" nor did they otherwise provide notice of "which crimes the prosecution sought to have redesignated as underlying felonies, the

8

length of sentence the prosecution proposed, and how that recommended sentence was calculated." (*Silva,* at p. 523.)

The *Silva* court accounted for this eventuality in requiring that, "[i]f the prosecution makes no resentencing recommendation, the court must notify the petitioner in advance of its proposal for redesignation and resentencing and must give him or her an opportunity to respond." (*Silva, supra,* 72 Cal.App.5th at pp. 523-524.) But the trial court in this case also did not provide notice in advance of the hearing. Accordingly, we conclude Del Rio did not receive any notice and the lack of notice violated his due process rights.

Although the People did not argue that any error was harmless, we nonetheless conclude that it was not. "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." (*Chapman v. California* (1967) 386 U.S. 18, 24.) Where a defendant is convicted of a violent felony and sentenced to probation without notice of the potential charge against him, we cannot say the error was harmless beyond a reasonable doubt. This is particularly true where, as we shall discuss, the conviction was not based on substantial evidence.

C.  *The Robbery Conviction Was Not Supported by Substantial Evidence*

The trial court did not make any factual findings at the section 1172.6 hearing before convicting Del Rio of robbery and imposing a revised sentence. (C.f. *Silva, supra,* 72 Cal.App.5th at p. 530 ["[i]n cases in which the underlying felony or target offense was never charged, the resentencing judge necessarily must identify the appropriate redesignated offense and *make factual* findings on the petitioner's guilt" (italics added)].) The People contend the implied finding that Del Rio committed robbery is nonetheless

9

supported by substantial evidence because the procedural histories of our prior appellate opinions and the factual recitation contained in the 1978 probation report make clear that no other offense aside from robbery could have been the predicate for Del Rio's murder convictions under a felony murder theory. Although they acknowledge the probation report contains hearsay evidence, the People argue the hearsay information is reliable, and thus admissible for resentencing purposes.

In reviewing for substantial evidence, we view the evidence in the light most favorable to the prosecution. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) To constitute substantial evidence, the evidence must be " 'reasonable, credible, and of solid value.' " (*Ibid.*)

Unlike subdivision (d)(3) of section 1172.6, which specifies the types of evidence the court may consider in determining whether the prosecution has met its burden of proof on the murder or attempted murder conviction, subdivision (e) does not clarify what evidence the court may rely upon in determining which target offense to redesignate for resentencing purposes if the target offense was not charged. (§ 1172.6, subds. (d) & (e).) The courts that have addressed this question have concluded that the prosecution's proof of the underlying felony or target offense "must be found exclusively in the record of conviction." (*Silva, supra*, 72 Cal.App.5th at p. 527; *People v. Gonzales* (2021) 65 Cal.App.5th 1167, 1174; *In re I.A.* (2020) 48 Cal.App.5th 767, 775.)

Ordinarily, a probation officer's report is not part of the record of conviction. (*People v. Burnes* (2015) 242 Cal.App.4th 1452, 1458 [confirming that, because a probation report is not part of the record of conviction, "when determining eligibility for resentencing, a probation report 'cannot supply facts involving circumstances of the offense itself' "].) Some courts have,

however, allowed limited use of hearsay evidence from probation reports when determining eligibility for resentencing under other resentencing laws—but only if the hearsay information is reliable. (See *People v. Hall* (2019) 39 Cal.App.5th 831, 838 (*Hall*) [holding reliable hearsay statements in a probation report are admissible to show a petitioner is eligible for relief under Proposition 64]; *People v. Sledge* (2017) 7 Cal.App.5th 1089, 1095 (*Sledge*) [authorizing limited use of hearsay from probation reports during Proposition 47 resentencing hearing "provided there is a substantial basis for believing the hearsay information is reliable"].) The rationale for doing so is that these propositions apply to sentencing, and both the United States Supreme Court and the California Supreme Court have held that convicted defendants are not entitled to the same evidentiary protections at sentencing as they are at trial. (*Williams v. New York* (1949) 337 U.S. 241, 246, 251; *People v. Arbuckle* (1978) 22 Cal.3d 749, 754-755.) Although sentencing proceedings must still comply with due process notions of fundamental fairness, a sentencing judge may consider hearsay evidence during this phase of the proceedings. (*Arbuckle*, at pp. 754-755.) This leniency allows judges to take into account factors described in the probation report, such as whether the individual is a repeat offender or the influence of health or environmental factors, in tailoring the sentence to the individual. (*Williams*, at pp. 247-250.) In so doing, the "[r]eliability of the information considered by the court is the key issue in determining fundamental fairness." (*Arbuckle*, at pp. 754-755.)

To the extent section 1172.6 bases the new sentence on a target offense for which the defendant was convicted, it is a resentencing statute comparable to Propositions 47 and 64 because it similarly reduces the punishment for offenders if they could not have been found guilty, or would have been convicted of a lesser offense, under the law as it currently stands.

11

(See *Sledge*, *supra*, 7 Cal.App.5th at pp. 1092, 1094 [applying Proposition 47, which provides for recall of a sentence if a prior felony conviction would have been a misdemeanor had Proposition 47 had been in effect at the time of the offense]; *Hall*, *supra*, 39 Cal.App.5th at pp. 835-836 [explaining that Proposition 64 allows the court to dismiss a felony conviction for transportation of cannabis or redesignate it as a misdemeanor offense or an infraction depending on the quantity of cannabis].) Under these circumstances, it also logically makes sense to allow the sentencing court to consult hearsay evidence to determine what other convictions the defendant suffered and whether any of them qualifies as an underlying target offense under section 1172.6 for resentencing purposes. But relying upon hearsay evidence in a probation report, even reliable hearsay, as the entire factual and evidentiary background supporting the conviction of an uncharged, unproven offense seems categorically different. However, we need not decide this issue because, in this case, even if the trial court could consider reliable hearsay evidence in choosing an uncharged target offense to form the new basis for conviction, the probation report here was neither admissible nor reliable.

The report is based on a summary of "numerous police reports on file within the District Attorney's files" and contains layers of hearsay. It states that Ronald was found stripped to the waist and had been shot, stabbed, and beaten. Helen was found in a different location with several apparent stab wounds and possible gunshot wounds. Hotel staff said their room appeared to have been ransacked, a blood spot was found on the bedspread, and Ronald's ring was found in a drawer.

Ronald's wife told the Pittsburgh Police Department that her husband had taken $18,000 to $19,000 with him to San Diego to purchase narcotics.

12

She said their contact was Del Rio.  Customs agents subsequently apprehended Del Rio at the international border in possession of one ounce of heroin and receipts for vehicle and motorcycle parts totaling approximately $6,000.  The sellers of the items reportedly indicated that the purchases were made using new $50 and $100 bills "similar to the bills that allegedly [Ronald] had in his possession."  A ring someone identified as belonging to Ronald was recovered from Del Rio's girlfriend.  According to other "reports," a nonfinal "neutronic analysis" of Del Rio's hair noted it was microscopically similar to hairs found in Ronald's watchband.

The People's only basis for arguing this evidence is reliable is that the transcript of the 1978 sentencing hearing showed that defense counsel corrected several inaccuracies in the report but did not object to the above factual statements.  Initially, the mere fact that counsel had to correct factual inaccuracies calls the report's reliability into question.  Further, Del Rio's counsel in 1978 may not have felt it necessary to challenge every factual assertion in the report, given that the court had just conducted a jury trial and, as the report itself states, "the Court [wa]s probably aware of all the admissible evidence."  At that time, counsel's focus would have been on the probation report's recommendation regarding sentencing and probation for the murder convictions, not on the factual basis supporting an uncharged robbery allegation.  As the court in *People v. Banda* (2018) 26 Cal.App.5th 349 noted in concluding that a probation report alone was not reliable to prove the factual basis underlying the petitioner's marijuana cultivation conviction, "it was only submitted to for a limited purpose [sentencing], a purpose that did not relate to the factual issue now presented."  (*Id.* at p. 359.)  The same is true here.  Defense counsel's failure

13

to object to each and every factual discrepancy does not alone render the entire probation report reliable and admissible.

More importantly, the sentencing transcript the People rely upon to show that the probation report is reliable is not even part of the record before us on appeal. In a separately filed request for judicial notice, the People request that we take judicial notice of the 1978 sentencing hearing transcript pursuant to California Rules of Court, rule 8.252(a), and Evidence Code section 452, subdivision (d). Del Rio opposes. But "taking judicial notice only establishe[s] the existence and content of the [lower court document], not the truth of any factual statements contained therein. If offered for the truth, those factual statements are hearsay and multiple hearsay." (*Sledge, supra*, 7 Cal.App.5th at p. 1096.) The People did not request to augment the record and without considering the truth of the statements contained in the sentencing transcript, the document will not aid the People's argument in favor of this court considering the probation report. Nonetheless, we grant the request because the transcript demonstrates that, to the extent the resentencing court relied upon the probation report, it was not appropriate to do so in a vacuum.

Although we do not accept the facts of the sentencing transcript or the probation report as admissible to support the robbery conviction, we discuss them here to elucidate how the sentencing transcript fatally undermines the reliability of the probation report. Most significantly, after defense counsel highlighted numerous factual inaccuracies, at least one of which the prosecutor conceded was error, the court asked the probation officer to prepare a postsentencing probation report correcting the errors. The 1978 probation report proffered by the People as sufficient evidence of the robbery conviction is *not* the final, corrected report. The prosecutor also explained

14

that the hair found in Ronald's watchband also had the same characteristics of the victim so "the expert couldn't make any finding one way or the other whether it was Mr. Del Rio's hair or not." Because it was "neutral evidence," the prosecutor chose not to introduce it at trial. Thus, the probation report also is not a reliable recitation of the facts presented at trial because it contains evidence that is misleading and was not even introduced at trial. For these reasons, we conclude the People have not demonstrated a substantial basis for believing the hearsay information in the probation report is reliable. (*Sledge, supra*, 7 Cal.App.5th at p. 1095.)

This leaves no evidence in the record on appeal, substantial or otherwise, supporting Del Rio's robbery conviction. Accordingly, we must reverse.

### DISPOSITION

The judgment is reversed, and the matter is remanded to the trial court for further proceedings consistent with this opinion.


HUFFMAN, Acting P. J.

WE CONCUR:


IRION, J.


BUCHANAN, J.