EDGEBORO, INC., A CORPORATION, CITY OF NEW BRUNSWICK, A MUNICIPAL CORPORATION, PLAINTIFFS, v. EAST BRUNSWICK TOWNSHIP, A MUNICIPAL CORPORATION, DEFENDANT.

Superior Court of New Jersey
Chancery Division

Decided June 17, 1954.

*Mr. Paul W. Ewing,* attorney for plaintiffs.

*Mr. Theodore Appleby,* attorney for defendant (*Mr. Francis N. Reps,* of counsel).

GOLDMANN, J. S. C.   This is an injunction action wherein Edgeboro, Inc. seeks to restrain defendant, its officials, em-

ployees and servants, from in any way interfering with and preventing the company from disposing of all garbage, ashes, refuse, trash and debris of the City of New Brunswick (hereinafter designated as the city) at the company's dumping area in East Brunswick Township (hereinafter designated as the township). The city seeks similar restraint against any interference with its delivery of such waste materials to Edgeboro at the dumping area. An order to show cause with interim restraint issued. On the return day defendant moved for summary judgment in its favor on the ground that the complaint set forth no cause of action and the pleadings raised no material issue of fact. It also moved for an order permanently restraining plaintiffs from disposing of the city's garbage, ashes and refuse at Edgeboro's dumping area in the township. The parties have agreed to submit the matter for determination on the statement of facts and legal issues set out in the pretrial order.

Edgeboro owns about 400 acres of unimproved lowland and swampland in the defendant township, situated in an area designated by the township zoning ordinance of December 23, 1952 as "heavy industrial." Section XIII of the ordinance provides:

"*Uses Permitted*
In the Heavy Industrial H. I. Zone, no lot shall be used or no structure shall be erected, altered or occupied for residential purposes or for any purpose except the following:
(1) Uses permitted in the Light Industrial L. I. Zone.
(2) All industrial and manufacturing uses if located not less than 500 feet from the boundary of a district other than an industrial district and upon issuance of a use permit by the Board of Adjustment.
(3) A use permit shall be granted after proof is submitted that no danger to life, limb, or property is created beyond the limits of the lot and that no objectionable noise, smell, smoke, dust, gas, glare, or effluent is emitted, the effect of which is noticeable outside the Industrial district.
*Such permitted uses may include:*
        *    *    *
(5) The dumping, incineration or disposal of refuse.
        *    *    *."

Since February 1953 a large part of the Edgeboro tract has been devoted to and used for the dumping and disposal of garbage, ashes, refuse, trash and debris from defendant township, which has delivered such materials to Edgeboro and deposited them on its lands. In January 1954 the township entered into an agreement with Edgeboro whereby, in consideration of an annual payment of $3,080, the township was permitted to dump and dispose of all of its garbage, ashes and refuse on the Edgeboro tract for a term of three years, at such spots as Edgeboro might designate. Edgeboro agreed properly to maintain, supervise and safeguard the dump area at its own cost and expense. One of the provisions of the contract was:

"It is understood between the parties hereto that consent has heretofore been granted by resolutions of the party of the second part [East Brunswick Township] and The Township Board of Health to the use of the aforementioned dumping grounds by the Borough of Milltown upon certain stipulated conditions, and such consent constitutes a portion of the consideration to the party of the first part in executing this contract. * * *"

Attached to the agreement was the following consent of the township board of adjustment:

"Pursuant to the provisions of Section 13 of the Zoning Ordinance of the Township of East Brunswick, we hereby consent to the use of the foregoing described lands as a dump, pursuant to the terms, conditions and regulations contained in the within agreement."

In January 1954 the Borough of Milltown entered into a substantially similar agreement with Edgeboro for three years at $3,500 per year. In connection with this contract Edgeboro applied for and obtained consents from the governing body and board of health of defendant township to the dumping of Milltown's garbage and ashes on the Edgeboro tract. Milltown has been carting and delivering its garbage and ashes to Edgeboro at the dumping area, without interference by defendant township.

Plaintiffs contend that, relying upon the fact that the lands in question were zoned by the township as a dumping area

and were so used, they entered into a valid agreement in April 1954 (after advertisement, bid and acceptance of bid) giving the city dumping rights for a period of five years at $32,000 a year. By that contract Edgeboro agreed to permit the city to dump and dispose of all its garbage, ashes, refuse, trash and debris at such places in the Edgeboro dumping area as Edgeboro might designate, the quantity not to exceed 125 tons a day. On its part Edgeboro agreed, at its sole cost and expense, properly to maintain, supervise and safeguard the dumping area in the manner provided in the contract. It was specified that the $32,000 annual payment was to compensate Edgeboro for the following: $15,500 for furnishing all necessary supplies, equipment and labor for operating the dumping ground; $14,500 for all fill dirt necessary to cover the refuse delivered by the city, and $2,000 for the maintenance of a private road on the Edgeboro tract leading to the dumping area. The agreement expressly provided that it was the intention of the parties that Edgeboro "shall be solely responsible for the proper operation and maintenance of said dumping area, * * *."

Plaintiff city began to deliver its garbage and ashes to the dumping area on May 4, but the operation was halted when the township police arrested its truck drivers. Similar action was taken the next day. This injunction action resulted.

It is plaintiffs' contention that since the Edgeboro tract has been zoned for dumping and no ordinance has been enacted imposing additional regulations or restrictions, no further municipal permission is required by Edgeboro for the maintenance and operation of its dumping area. It is admitted that neither Edgeboro nor the city has sought or obtained the consent of the township governing board or the township board of health for disposing of New Brunswick's garbage, ashes and refuse.

Defendant raises the following defenses:

1. The contract between the plaintiffs is a lease relating to lands within the confines of the township, and accordingly the provisions

of *R. S.* 40:66-3 apply and a permit is required from both the governing body and board of health of the township.

2. The contract provides for the disposal of waste and refuse other than indestructible waste, of the City of New Brunswick, and for that reason is *ultra vires* by reason of the provisions of *R. S.* 40:66-3.

3. Edgeboro is estopped from denying the necessity of securing permits from the township and its board of health for the dumping operations in question in view of the fact that it sought and obtained such permits in connection with the Milltown contract which is quite similar to the New Brunswick contract.

4. Plaintiff city is estopped from denying the necessity of securing permits from the township and its board of health for the dumping operation in question because the city sought and secured such permits on two previous occasions, when it entered into dumping contracts with one Robert J. Herbert, Jr. in August 1947 and again in November 1952 for the dumping of the city's garbage and ashes on his lands located in defendant township. The city thereby indicated that it considered its dumping contract as a lease and acknowledged the pertinence and applicability of the provisions of *R. S.* 40:66-3.

5. Plaintiffs failed to obtain a use permit from the board of adjustment of the township, contrary to the provisions of Section XIII of the zoning ordinance, quoted above.

At the pretrial conference and in its brief defendant no longer urges the defense raised in the answer that in failing to obtain the consent of the township board of health for the dumping operation, plaintiffs acted contrary to the provisions of *N. J. S. A.* 26:3-31(*f*), which authorizes local boards of health to pass ordinances and to make rules and regulations "to regulate, control, and prohibit the accumulation of offal and any decaying of vegetable substance." This defense was without validity. *N. J. S. A.* 26:3-31(*f*) does not require consent or permission of the local board of health. It is not contended that the East Brunswick Board of Health has at any time exercised the statutory power to adopt any ordinance, rule or regulation relating to dumping, as did the board of health in *Earruso v. Board of Health, E. Hanover Twp.*, 120 *N. J. L.* 463 (*Sup. Ct.* 1938).

*R. S.* 40:66-3 provides:

"Every municipality may acquire, by purchase, lease or condemnation, unimproved lowlands, within or without the municipality, to

be used for the deposit of ashes or other indestructible waste and refuse matter of the municipality, but no such lands shall be acquired or used for such purpose outside the limits of the municipality, without the consent of the governing body and of the board of health of the municipality wherein such lands are situated."

Defendant argues at some length that the dumping agreement between Edgeboro and the City of New Brunswick is a lease. The contention is without merit. Nowhere in the April 1954 contract are the words of a lease employed, such as "grant," "demise," "to farm let." Nor does the agreement give the city possession of Edgeboro's lands. Although no particular words are necessary to create a lease, the intention of the one party to divest himself of possession, and of the other party to come into possession for a determinate period and for a fixed rental, must appear. 51 *C. J. S., Landlord and Tenant,* § 202(*b*), *p.* 803; 1 *Washburn on Real Property* (*5th ed.* 1887), *p.* 465. Possession is the touchstone of a lease. New Brunswick does not have possession of the Edgeboro lands, nor any control over them; possession and the sole responsibility for the maintenance and operation of the disposal area remains in Edgeboro under the contract.

The contract between plaintiffs is an agreement for the services and equipment of Edgeboro in disposing of New Brunswick's garbage, ashes and refuse. Present also are the elements of a license—the privilege of using Edgeboro's lands for dumping waste material. See 32 *Am. Jur., Landlord and Tenant,* § 5, *p.* 30, and 51 *C. J. S., Landlord and Tenant,* § 202(*e*)(*2*), *p.* 806. Accordingly, defendant's argument that the consents of its governing body and board of health are necessary because New Brunswick has by lease acquired lands outside its municipal limits, falls.

Dispositive of the question before us is the specific language of *R. S.* 40:66–3 that "no such lands shall be acquired *or used* for such purpose outside the limits of the municipality, without the consent of the governing body and of the board of health of the municipality wherein such lands are situated." The words "such lands" refer to "unimproved low-

lands," mentioned in the first clause of the section, and the words "for such purpose" refer to "the deposit of ashes or other indestructible waste or refuse matter of the municipality." It is to be noted that the statutory language, "acquired or used," is in the disjunctive. We need not concern ourselves with the word "acquired." New Brunswick has not acquired unimproved lowlands for dumping purposes "by purchase, lease or condemnation." But the Edgeboro tract is intended to be "used" by New Brunswick for the deposit of its ashes or other indestructible waste and refuse matter. It cannot do so without first obtaining the consents of the governing body and board of health of East Brunswick Township.

The language of the statute is clear and unequivocal. It does not matter how a municipality acquires the right to use lands outside its boundaries for dumping purposes, whether by purchase, lease or condemnation, or by devise or gift, or (as here) by contract. In any case it must first obtain the necessary municipal consents before it can deposit ashes or other indestructible waste and refuse matter on the dumping area. Any other interpretation of the statute would leave a municipality like East Brunswick Township at the mercy of the owner of a large dumping tract who is ready and willing to take the garbage, ashes and refuse of any and all municipalities in the surrounding area.

Control over the disposition of garbage, ashes and refuse has been termed indispensable to the public health, safety and comfort. *Earruso v. Board of Health, East Hanover Twp.*, 120 *N. J. L.* 463, 469 (*Sup. Ct.* 1938). The Legislature has granted municipal governing bodies and boards of health ample power to deal with the problem. *N. J. S. A.* 26 :3–31, 40 :48–2, 40 :66–1 *et seq.* Unless *R. S.* 40 :66–3 be given the meaning and effect which we consider the Legislature intended it to have, effective municipal control over a private dumping ground like the Edgeboro tract will, in the words of Judge (now Justice) Jacobs in *Township of Dover v. Witt*, 7 *N. J. Super.* 259, 262 (*App. Div.* 1950),

"be reduced, and increased dangers of impairment of the public health, safety and comfort would be manifest."

█ Plaintiffs' dumping operations contravene *R. S.* 40 :66–3 because the required permits of the governing body and board of health of East Brunswick Township have not been obtained. What the City of New Brunswick cannot do directly it may not do through Edgeboro, Inc. Their position is not a meritorious one, and their application for an injunction carries no appeal to the equitable conscience of the court. In view of this determination, it is not necessary to consider the other points raised by defendant.

The motion for summary judgment is allowed. An order will be entered permanently restraining plaintiffs from disposing of the garbage, ashes, refuse, trash and debris of the City of New Brunswick upon the Edgeboro tract unless and until consents for such disposal have first been obtained from the governing body and board of health of the township.