# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE, )
       Plaintiff, )
)
v. ) Crim I.D. No. 2012004283
)
DASHAN PERRIGAN, )
       Defendant. )

Submitted: January 16, 2025
Decided: April 16, 2025

# **<u>MEMORANDUM OPINION</u>**

### *On Defendant's Motion for Post Conviction Relief* **– DENIED**

John Downs, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, *attorney for the State of Delaware*

James J. Haley, Esquire, Ferrara & Haley, Wilmington, Delaware, *attorney for Defendant*

**BRENNAN, J.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

Dashan Perrigan (hereinafter "Perrigan") was indicted on March 8, 2021, for charges of Murder in the First Degree, Possession of a Firearm During the Commission of a Felony (hereinafter "PFDCF"), and Possession of a Firearm by a Person Prohibited.[1] The indictment stems from Perrigan having recklessly shot into a crowd on a busy city street in Wilmington on December 10, 2020. Seemingly unprovoked, Perrigan ran down the street in Wilmington as he fired several shots behind him.[2] One of Perrigan's bullets struck Michael Reams, an innocent bystander, who was simply on the sidewalk as Perrigan shot into the crowd.[3] Michael Reams was shot in the abdomen and ultimately succumbed to his wounds.[4]

Following indictment, Perrigan's case was assigned to a Superior Court Judge (hereinafter "the Plea Judge") until it's "final disposition."[5] On April 27, 2022, Perrigan entered a guilty plea to the lesser-included-offense of Murder in the Second Degree and PFDCF.[6] During the colloquy the following exchange occurred:

> THE COURT: Now, my understanding is what you want to do today is plead guilty to a couple of these charges. Is that right?
>
> PERRIGAN: Yes.

---

[1] State v. Dashan Perrigan, Crim. I.D. No. 2012004283, Docket Item ("D.I.") D.I. 2.
[2] D.I. 23, 24.
[3] *Id*.
[4] *Id.*
[5] D.I. 4.
[6] D.I. 22.

2

THE COURT: All right. And how far did you go in school, sir?

PERRIGAN: Obtained my GED.

THE COURT: All right. Do you have any mental or physical condition today that prevents you from understanding what's going on?

PERRIGAN: No.

THE COURT: Do you understand what's going on?

PERRIGAN Yes.

THE COURT: You're here to plead guilty?

PERRIGAN: Yes.

THE COURT: All right. And you had an opportunity to review this form with your attorneys?

PERRIGAN: Yes.[7]

The Plea Judge then enumerated the Constitutional rights waived by a plea of guilt, which Perrigan indicated he understood. Perrigan was then questioned regarding sentencing:

THE COURT: All right. Now, it's my understanding that there have been discussions with your lawyers and the State about the eventual sentence in this case. Do you understand that?

PERRIGAN: Yes.

---

[7] D.I. 22, Plea Trans. pp. 5-6. As part of entering his plea, Perrigan completed and signed the Truth-In-Sentencing Guilty Plea form acknowledging his waiver of his rights.

THE COURT:      There's going to be a presentence investigation done, but the State is going to cap its recommendation for your Level V time at 25 years. Do you understand that?

PERRIGAN:       Yes.

THE COURT:      Do you understand even though there's been discussions between your lawyers and the State, that the ultimate decision-maker in terms of a sentence will be me?

PERRIGAN:       Yes.

THE COURT:      Do you understand that?

PERRIGAN:       Mm-hmm.

THE COURT:      And do you understand that if I chose to do it, I could sentence you to life imprisonment for the rest of your life?

PERRIGAN:       Yes.[8]

Perrigan's case was ultimately scheduled for sentencing before a different Superior Court judge ("the Sentencing Judge").[9] Without objecting, Trial Counsel reached out to the Court to confirm the transfer.[10] The case proceeded to sentencing before the Sentencing Judge on July 22, 2022.[11]

The State, both at the time of sentencing and in a memorandum previously

---

[8] *Id.* at p. 7.
[9] D.I. 24.
[10] D.I. 24, 38.
[11] D.I. 24.

submitted to the Court, recommended a sentence of fifty (50) years at Level V for Murder in the Second Degree, suspended after twenty (20) years, followed by decreasing levels of probation. For the charge of PFDCF, the State recommended five (5) years at Level V. In total, the State's recommendation was for a combined period of twenty-five (25) years of unsuspended Level V time.[12] Both in correspondence prior to and at sentencing, Perrigan's Counsel acknowledged his conduct as reckless and impulsive, relied on a psychological evaluation of Perrigan as mitigation and to show his distressed mental state at the time of his crime and requested the Court impose the twenty (20) year minimum mandatory sentence.[13] At the hearing, Perrigan addressed the Court:

> [I]t wasn't intentional. That's all. It was just – it was a situation that happened. It was the spur of the moment, the heat of the moment. The only thing I could think of was protect myself, and he ended up – I don't know if you call it a casualty or what, but he ended up being the person dead.[14]

Perrigan was then sentenced to fifty (50) years at Level V suspended after twenty-five (25) years with decreasing levels of probation for Murder in the Second Degree, and five (5) years at Level V for the PFDCF charge.[15] On the record at the time of sentencing, the Sentencing Judge found the following aggravating factors

---

[12] D.I. 23, 24.
[13] D.I. 24.
[14] D.I. 24; *see also* Sent. Trans., p. 19.
[15] *Id.* at pp. 24-25.

existed: Undue Depreciation of the Offense, Custody Status at the Time of the Offense, and Lack of Amenability to Lesser Sanctions.[16]

On August 11, 2022, Perrigan appealed his sentence to the Supreme Court of Delaware.[17] In his direct appeal, Perrigan argued his due process rights were violated when he was sentenced by the Sentencing Judge as opposed to the Plea Judge.[18] In his appeal, Perrigan thoroughly presented this claim, including challenging the sentencing as both a violation of his due process rights, citing a California Supreme Court decision as support, and as a violation of the Superior Court President Judge's assignment Order. On March 8, 2023, the Supreme Court affirmed Perrigan's conviction and sentence.[19]

On August 10, 2023, Perrigan filed a *pro se* motion for postconviction relief.[20] On September 8, 2023, a briefing schedule was issued by the Court.[21] In accordance with that schedule, Trial Counsel submitted an Affidavit in response on October 6, 2023.[22] The State filed its response in opposition on December 1, 2023.[23] Perrigan

---

[16] *Id*. at pp. 21-23; D.I. 26. The sentence was later corrected on August 8, 2022, to reflect a correct effective date, but no other substantive changes were made. D.I 25.
[17] D.I. 27; *see Perrigan v. State*, 2023 WL 2656853, at *1 (Del. 2023).
[18] *Perrigan*, 2023 WL 2656853, at *1.
[19] *Id.* at *4.
[20] D.I. 35.
[21] D.I. 37.
[22] D.I. 38.
[23] D.I. 39.

filed his Reply on December 21, 2023.[24] It was not until December 27, 2023, that Perrigan moved for counsel to be appointed.[25] Finding "exceptional circumstances" excused Perrigan's untimely motion for counsel, this motion was granted on March 20, 2024.[26] Counsel was ultimately assigned to Perrigan in August, 2024, and on September 16, 2024, a new postconviction briefing schedule was issued.[27]

On October 29, 2024, through counsel, Perrigan filed the instant amended motion for postconviction relief.[28] This motion raises one ground for relief, but that single ground charges both ineffective assistance of Trial Counsel for failing to object to the Sentencing Judge presiding and also argues his sentencing by the Sentencing Judge was improper, as it violated the President Judge's special assignment.[29] On December 17, 2024, the State responded in opposition to Perrigan's amended motion.[30] Perrigan's Reply was filed on January 16, 2025.[31] This is the Court's Opinion.

## II.    STANDARD OF REVIEW

Before addressing the merits of a postconviction motion under Rule 61, the

---

[24] D.I. 42.
[25] D.I. 43.
[26] D.I. 44.
[27] D.I. 45, 46.
[28] Def. Amend. Motion for Postconviction Relief, D.I. 47.
[29] *Id.*
[30] *See* State's Response, D.I. 49.
[31] *See* Def. Reply, D.I. 50.

Court must examine whether any of the Rule's procedural bars apply.[32] An applicable procedural bar precludes a reviewing court from addressing the merits of a Rule 61 claim, to "protect the procedural integrity" of the Court Rules.[33] A motion for postconviction relief can be procedurally barred as untimely, repetitive, for failing to raise a claim in the proceedings leading to the judgment of conviction, and for being formerly adjudicated.[34]

Superior Court Criminal Rule 61(i)(1) precludes review of a motion for postconviction relief filed more than one year after the judgment of conviction is final.[35] A defendant's conviction is final thirty days after this Court imposes its sentence, or when the Delaware Supreme Court issues a mandate or order where the conviction was directly appealed.[36]

When considering the substance of Perrigan's motion, the Court will determine whether Perrigan has met his burden in bringing an ineffective assistance of counsel claim by showing that counsel's representation fell below "an objective standard of reasonableness" and that there is a "reasonable probability" that, but for counsel's alleged errors, the results of the proceedings would have been different.[37]

---

[32] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[33] *State v. Page*, 2009 WL 1141738, at *13 (Del. Super.).
[34] Super. Ct. Crim. R. 61(i)(1)-(4).
[35] *Id.* at (1).
[36] *Id.* at (1)-(2).
[37] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

8

In the context of a plea, Perrigan must show that but for counsel's deficiencies, he would not have pled and insisted on proceeding with trial.[38]

### III. ANALYSIS

Perrigan's Rule 61 motion, like his direct appeal, challenges the case's transfer from the Plea Judge to the Sentencing Judge. This time, however, Perrigan seeks relief under an ineffective assistance of counsel claim for trial counsel's failure to object before the Sentencing Judge presided. That claim has not yet been adjudicated and is now appropriate for this Court to review.[39] Perrigan's motion is timely, as it was filed within one year from the date his conviction became final.[40] Therefore, his ineffective assistance claim will be reviewed on its merits.

Perrigan's motion argues counsel was ineffective for failing to object to him having been sentenced by the Sentencing Judge.[41] Perrigan argues his due process

---

[38] *Jamison v. State*, 2003 WL 21295908, at *2 (Del. June 3, 2003).

[39] *Hoskins v. State*, 102 A.3d 724, 729 (Del. 2014) (holding a direct appeal for plain error does not preclude an ineffective assistance of counsel claim under Rule 61(i)(4)).

[40] Super. Ct. Crim. R. 61(i)(1). Perrigan's conviction became final on March 8, 2023, when his appeal was denied and conviction affirmed. His original *pro se* motion for postconviction relief was filed August 10, 2023.

[41] Initially, when Perrigan moved *pro se* for postconviction relief, he moved under two grounds: 1) counsel was ineffective for failing to object to a different sentencing judge and 2) that an error occurred in that he was sentenced by a different judge than the originally assigned judge. Upon the appointment of counsel, Perrigan, now through counsel, filed a modified motion for postconviction relief, wherein seemingly one ground of ineffectiveness is being raised, but also calls into question the authority of the Sentencing Judge to conduct his sentencing. Nevertheless, Perrigan's *pro se* Count II would have been procedurally barred by Super. Ct. Crim.

9

rights require him to either be sentenced by the same judge who accepted his plea, or he should be allowed to withdraw his plea, pursuant to *People of California v. Arbuckle*.[42]  Pursuant to these alleged *Arbuckle* rights, he argues counsel was ineffective for failing to object and assert these rights when it was learned the Sentencing Judge would be presiding.  As he did in his direct appeal, Perrigan argues that the Plea Judge's words, using personal pronouns such as "I" and "me" consisted of a promise that he would sentence Perrigan, which formed the basis of his belief that he would be sentenced by the Plea Judge.  Further, Perrigan argues that the President Judge's appointment letter disallows a different judge to handle sentencing, as the docket does not indicate any reassignment.[43]

Trial Counsel's Affidavit states Perrigan's assertion that counsel neither objected to the assignment of the Sentencing Judge, nor ever pursued his alleged *Arbuckle* rights is correct.[44]  Without acknowledging ineffectiveness or that Perrigan was entitled to any such *Arbuckle* rights, Trial Counsel agrees that Perrigan was not advised that "if the original judge was not available for sentencing, the defendant must be given the option of proceeding before a different judge or withdrawing his plea."[45]  The State opposes Perrigan's motion, arguing counsel was not ineffective,

---

R. 61(i)(4), even if it is not fully incorporated in the amended motion.

[42] 22 Cal.3d 749 (Cal. 1978)

[43] D.I. 47.

[44] D.I. 38.

[45] *Id.*

as the Supreme Court has already found no violation of Perrigan's rights occurred on his direct appeal.

To succeed on a claim of ineffective assistance of counsel where the movant entered a guilty plea, the movant must show that counsel's representation fell below an objective standard of reasonableness and that counsel's actions, or inactions, were so prejudicial that there is a reasonable probability that, but for counsel's errors, the movant would not have pled guilty and insisted on going to trial.[46]   As his first hurdle, Perrigan must show that counsel's failure to object was unreasonable.

The Delaware Supreme Court has already ruled that Delaware due process jurisprudence does not require nor recognize those rights articulated by California in *Arbuckle*.[47]  While the Supreme Court distinguished *Arbuckle* from Perrigan's case by pointing out that Arbuckle's attorney objected to the sentencing judge differing from the plea judge, it was not in the context as Perrigan asserts.  The Supreme Court, in noting this distinction, highlighted that Perrigan "was content with the Sentencing Judge until [he was given] a sentence that exceeded the State's recommendation." The Supreme Court then cited and shared the concerns addressed by the California Supreme Court following its decision in *Arbuckle*, and noted a

---

[46] *Carter v. State*, 2005 WL 3131583, *citing Hill v. Lockhart*, 474 U.S. 52, 58 (1985).
[47] *Perrigan v. State*, 2023 WL 2656853, *3; See also Super. Ct. Del. Crim. R. 25 (only requiring the same judge sit for sentencing if that judge presided over the trial; as noted above, Perrigan pled guilty in this case).

11

defendant "does not have the option of taking his chances before the different judge and, if the result is unfavorable, then demand the original judge."[48]

The Supreme Court continued to conclude that no such *Arbuckle* rights are required in Delaware. Specifically, the Court stated:

> Further, there was no legal requirement for the Plea Judge to sentence Perrigan. As a matter of state law, due process does not require that a defendant's "sentence be imposed by the same judge who accepted a defendant's guilty plea." The same is true under federal law. Perrigan agreed that the [written plea agreement] contained all the promises made by the State, and no other promises were made outside the plea agreement. The [written plea agreement] accepted by the court did not contain a promise that the Plea Judge would impose the sentence.[49]

In so ruling, the Supreme Court found that Perrigan's due process rights were not violated. Thus, it naturally follows that Trial Counsel's representation did not fall below an objective standard of reasonableness, because Perrigan was not owed any rights to assert which could have formed the basis of an objection.

The record simply does not support Perrigan's claims that he either relied upon the belief the Plea Judge would sentence him, or that had the Plea Judge handled Perrigan's sentencing, the result would have been different. Bare allegations regarding a different outcome based upon a judge's supposed reputation falls short of the concrete evidence required in postconviction motions.[50] Perrigan

---

[48] *Id., citing People of California v. Guerra*, 200 Cal. App.3d 1067, 1072 (Ct. App. 1988).
[49] *Perrigan*, 2023 WL 2656853 at *3.
[50] *Purnell v. State*, 106 A.2d 337, 342 (Del. 2014).

must show there was a reasonable probability that the outcome would have been different. "A reasonable probability means a probability sufficient to undermine confidence in the outcome...."[51] "The likelihood of a different result must be substantial[,] not just conceivable."[52] Perrigan "must make concrete allegations of actual prejudice and substantiate them[.]"[53] He has not done so here.

Perrigan's motion appears to argue a separate ground in addition to the ineffective assistance of counsel claim. As noted, within his ineffectiveness claim, Perrigan's amended motion refers to the special assignment of the President Judge of this case to the Trial Judge "for all purposes until final disposition."[54] Any argument by Perrigan with respect to whether the case could be transferred from the Plea Judge to the Sentencing Judge is otherwise barred by Super. Ct. Crim. R. 61(i)(4) as formerly adjudicated in his direct appeal. Further, this claim is without merit, as it is brought under the supposition that Perrigan has rights under *People v. Arbuckle*. He does not.

Acknowledging the Supreme Court's prior ruling on this issue, Perrigan submits this Court can still now review the issue because it was previously decided under a different standard of review:

[A]lthough Perrigan raised the issue of the Superior Court's error in

---

[51] *Green v. State*, 238 A.2d 160, 174 (Del. 2020).
[52] *Swan v. State*, 248 A.3d 839, 859 (Del. 2021).
[53] *Dawson v. State*, 673 A.3d 1186, 1196 (Del. 1996).
[54] D.I. 47, ¶¶ 20, 22-24.

transferring the case from [the Plea Judge] to [the Sentencing Judge] for sentencing, said error was reviewed by the Supreme Court for plain error…the absence of plain error on the face of the Superior Court record does not dispose of Perrigan's [Rule 61] motion.[55]

In support, Defense counsel relies on *Hoskins v. State*.[56] *Hoskins* is inapplicable as Perrigan's ineffectiveness claim was reviewed on its merits. Any additional arguments challenging the Sentencing Judge, to the extent they are not intertwined with the ineffective assistance of counsel claim, are procedurally barred as previously adjudicated under Rule 61(i)(4). Perrigan is not entitled to have "a court re-examine an issue that has been previously resolved."[57] To the extent Perrigan is advancing a second claim in his "Argument I," it procedurally barred under Rule 61(i)(4) as the underlying issue has already been decided in his direct appeal.[58]

---

[55] D.I. 50, ¶ 1-3.
[56] *Hoskins*, 102 A.3d 724, 729-30 (Del. 2014).
[57] *State v. White*, 278 A.3d 680, 687 (Del. 2022); quoting *Skinner v. State*, 607 A.2d 1170, 1172 (Del. 1992).
[58] *Id.* (explaining an "inadequate plea colloquy claim was substantively examined and resolved on direct appeal. Thus, [the defendant's] current complaint regarding a technical deficiency in that colloquy might well be deemed procedurally barred under Rule 61(i)(4)"); quoting *State v. Madison*, 2018 WL 1935966, at *4 (Del. Super. Apr. 11, 2018).

**IV. CONCLUSION**

For the foregoing reasons Perrigan's Motion for Postconviction relief is **DENIED.**

**IT IS SO ORDERED.**

_____
Danielle J. Brennan, Judge

cc:     John Downs, Deputy Attorney General
James J. Haley, Attorney for Defendant